131 P.3d 1058

**In re HYRUM H.**

**In re Jacob H.**

Nos. 1 CA–JV 05–0101, 1 CA–JV 05–0102.

Court of Appeals of Arizona,
Division 1, Department E.

March 7, 2006.

Criss E. Candelaria, Apache County Attorney by Edward W. France, III, Deputy County Attorney, St. Johns, Attorneys for Appellant.

D. Bryce Patterson, St. Johns, Attorney for Appellee Hyrum H.

Laurence C. Kress Attorney at Law by Laurence C. Kress, Show Low, Attorney for Appellee Jacob H.

**OPINION**

OROZCO, Judge.

¶ 1 In this consolidated appeal, the State challenges the juvenile court's order finding ten-year-old twin brothers, Hyrum H. and Jacob H. (collectively "the juveniles"), incompetent and not restorable to competency to participate in juvenile proceedings and dismissing the delinquency petition against them with prejudice. In affirming the juvenile court's decision, we conclude: (1) the juvenile court properly relied in part on an expert who used the juvenile incompetency standard and an adult competency assessment tool developed for adult criminal adjudications, among other evaluation methods, in finding that the juveniles were incompetent; and (2) the juvenile court did not err in interpreting the juvenile incompetency definition pursuant to Arizona Revised Statutes (A.R.S.) section 8–291(2) (Supp.2005) as not requiring an underlying disease, defect or disability.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The juveniles were alleged to be delinquent on one count each of sexual assault, a class two felony, for engaging in sexual intercourse or oral sexual contact with a four-year-old girl. Initially, both juveniles underwent a psychological evaluation with Dr. Steven Gray, a licensed psychologist.[1] Following the preliminary psychological examinations, the juvenile court appointed Dr. Jack Potts, a licensed forensic psychologist, to determine the juveniles' competency.

¶ 3 Before evaluating the juveniles, Dr. Potts reviewed Dr. Gray's psychological evaluations and the police reports and briefly spoke with the juveniles' mother. In his separate reports to the juvenile court, Dr. Potts opined that the juveniles were incompetent because they did not rationally understand the proceedings, their rights or the consequences of relinquishing their rights if they pled guilty. Dr. Potts also concluded that the juveniles could not be educated or restored to competency within 240 days pursuant to A.R.S. § 8–291.08 (Supp.2005) and specifically noted that the juveniles were neurologically immature and distractable, consistent with ADHD.

¶ 4 After Dr. Potts submitted his report to the juvenile court, the State filed a motion for an additional evaluation of both juveniles and requested that the second evaluator not be provided any previous evaluations "so that his/her report [would] truly be independent." The juvenile court granted the State's motion and appointed Dr. Daniel Cady, a licensed psychologist, to evaluate the juveniles' competency. The trial court also ordered Dr. Cady not be provided Dr. Potts's report.

¶ 5 Dr. Cady examined the juveniles, met with their mother and administered psychological tests. In his separate reports to the juvenile court, Dr. Cady recommended that the juveniles be found competent based on their normal intellect, capacity to disclose pertinent factual information about the case, ability to recognize the adversarial nature of the judicial process and general understanding of the court processes and participants. Dr. Cady also concluded that neither juvenile had a "diagnosable" mental health condition or was delusional. However, he noted that the juveniles' judgment and insight were limited to the extent that they were developmentally immature and recommended that complex matters be explained to them.

¶ 6 Drs. Potts and Cady testified at the competency hearings. After taking the competency issue under advisement, the juvenile court determined that the juveniles were incompetent because they did not have sufficient present ability to consult their attorneys with a reasonable degree of rational understanding and did not have a rational understanding of the proceedings against them. The court further found that there was no substantial probability that the juveniles could be restored to competency within the statutory period of 240 days. In reaching its determination, the juvenile court considered all three of the doctors' reports and Drs. Potts's and Cady's competency hearing testimony. The court also considered "the elements of the delinquent act alleged in [the] case and the possible consequences . . . of sexual assault which are especially complex and intricate." Accordingly, the juvenile court dismissed the cases with prejudice.

¶ 7 The State filed a Motion for Reconsideration and a Motion for Specific Findings of Fact and Conclusions of Law. The juvenile court denied the State's Motion for Reconsideration, but provided findings of fact to support its ruling. The juvenile court found that each of the doctors determined that the juve-

---

1. Dr. Gray completed a psychological evaluation of each juvenile by conducting a clinical interview, interviewing their mother and administering several diagnostic tests. He reported his comprehensive findings to the juvenile court and diagnosed the juveniles as victims and perpetrators of sexual abuse. Among his conclusions, Dr. Gray determined that the juveniles had average intelligence for their age and reported that they did not demonstrate problems associated with verbal comprehension, perceptual reasoning, working memory or processing speed. He, however, found that the juveniles' understanding of "natural and healthy sexuality" needed to be increased because they had been molested by a family member and thus, "prematurely exposed to inappropriate sexuality that overwhelmed their ability to make sense of what [they] saw, heard or experienced." Dr. Gray also recommended determining whether Jacob had Oppositional Defiant Disorder and Attention Deficit and Hyperactivity Disorder (ADHD).

niles had some hyperactivity issues but that they functioned intellectually within a normal range for their age. The court also noted that the juveniles had demonstrated their factual understanding of the juvenile court process, including the roles of the various participants with "a fair degree of accuracy."

¶ 8 The juvenile court characterized Dr. Cady's conclusion that the juveniles were competent as based only on their factual understanding of the proceedings, whereas it determined that Dr. Potts's contrary opinion was based on the juveniles' lack of a rational understanding of their rights and the consequences of foregoing them if they pled guilty. In upholding the dismissal, the juvenile court explained that it was necessary for the juveniles to "have a factual as well as a rational understanding of the proceedings against [them] in order to face delinquent charges such as these."

¶ 9 The State timely appealed. We have jurisdiction pursuant to A.R.S. § 8–235.A (Supp.2005).

## STANDARD OF REVIEW

¶ 10 We review a juvenile court's determination that a juvenile is incompetent to stand trial for an abuse of discretion. *In re Charles B.*, 194 Ariz. 174, 177, ¶ 7, 978 P.2d 659, 662 (App.1999). An abuse of discretion occurs "where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence 'is an abuse.' " *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983) (citations omitted). Additionally, we review *de novo* whether the juvenile court correctly interpreted the juvenile competency statute, A.R.S. § 8–291(2). *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 7, 117 P.3d 795, 797 (App.2005).

## DISCUSSION

¶ 11 The first issue is whether the juvenile court abused its discretion in basing its juvenile incompetency findings in part on an expert's opinion that partly relied on an adult competency assessment tool developed for adult criminal proceedings. The juvenile court is required to determine whether a juvenile is incompetent because A.R.S. § 8–291.01.A (Supp.2005) prohibits an incompetent juvenile from participating in a delinquency, incorrigibility or criminal proceeding. To conclude that a juvenile is incompetent, the juvenile court must find that a juvenile lacks "sufficient present ability to consult with the juvenile's lawyer with a reasonable degree of rational understanding or who does not have a rational and factual understanding of the proceedings against the juvenile." A.R.S. § 8–291(2). Although the opinions of mental health experts may assist a juvenile court in determining whether a juvenile is competent, the juvenile court is not bound by their opinions. *Charles B.*, 194 Ariz. at 177, ¶ 7, 978 P.2d at 662.

¶ 12 The State challenges the juvenile court's finding that the juveniles were incompetent by first arguing that it erred in relying on Dr. Potts's expert opinion because he used improper evaluation tools and standards in determining their competency. Specifically, the State contends that Dr. Potts improperly used a competency assessment tool that was developed for adult criminal proceedings. As support, the State cites Dr. Cady's testimony that the adult competency assessment tool, which consists of asking defendants about scenarios such as a bar fight or stealing a car, was designed to determine adult competency in criminal proceedings and not for children in juvenile proceedings. The State asserts that Dr. Potts inappropriately held the juveniles to an adult level of understanding of the juvenile proceedings. The State further alleges that Dr. Potts's results are unfair and biased because he knew research studies showed that juveniles were rarely found competent using his testing methodology.

¶ 13 The record does not support the State's assertion that Dr. Potts's opinion rested on improper standards or evaluation tools in concluding that the juveniles were incompetent. At the competency hearing, Dr. Potts explained that he evaluated whether the juveniles were able "to effectively assist their attorney or consult with their

attorney in ... a substantial fashion or have a factual or rational understanding of the proceedings." He further considered the juveniles' developmental issues rather than determining whether the juveniles had an underlying mental disease, defect or disability as the adult competency cases require. Additionally, at the competency hearing, Dr. Potts testified that he was aware of a particular study that reported that virtually all of the children in the ten-year-old range were found to be incompetent. Dr. Potts stated that despite these studies, he did not presume that a juvenile was incompetent simply based on age but interpreted the studies as requiring him to more carefully evaluate a ten year old. Dr. Potts's testimony demonstrates that the incompetency standards he used mirrored the juvenile incompetency definition.[2]

¶ 14 Dr. Potts also testified that he used several methods, other than the adult competency assessment tool used in adult criminal adjudications, to test the juveniles' competency, including conducting a clinical interview of the juveniles, reviewing Dr. Gray's test results, asking the juveniles to interpret common idiomatic expressions and observing whether they exhibited ADHD symptoms that would affect their concentration. Moreover, Dr. Cady acknowledged that "[i]t was appropriate under [Dr. Potts's] skill of training or his school of thought as a professional to apply those criteria or [the adult competency] tests." Dr. Cady explained that because the juvenile competency statutes do not explicitly prescribe specific testing guidelines, the method a mental health expert utilizes to determine a juvenile's competency is therefore left to the expert's professional judgment subject to the juvenile court's ultimate competency determination.

¶ 15 Finally, we note that the juvenile court did not solely rely on Dr. Potts's opinion. It considered all three of the doctors' reports, the competency hearing testimony and the nature of the alleged delinquent acts. Because the juvenile court properly considered all of the evidence, we conclude that it did not abuse its discretion in finding the juveniles incompetent to participate in the juvenile proceedings.

¶ 16 The State next argues that the trial court improperly interpreted the juvenile incompetency statute by not reading the juvenile definition of "incompetent" as requiring an underlying disease, defect or disability.

¶ 17 In construing statutes, we ascertain and give effect to the legislature's intent. *Linda V.,* 211 Ariz. at 78, ¶ 8, 117 P.3d 795 at 797. When determining the legislature's intent, we begin with the plain meaning of the statute. *Id.* When a statute is clear and unequivocal, it is determinative of the statute's construction. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).

¶ 18 As previously stated, a juvenile is incompetent if the juvenile "does not have sufficient present ability to consult with the juvenile's lawyer with a reasonable degree of rational understanding or who does not have a rational and factual understanding of the proceedings against the juvenile." A.R.S. § 8–291(2). This definition, by its express terms, does not require an underlying disease, defect or disability. Thus, a juvenile may be found incompetent even if the juvenile does not suffer from a "mental disorder, or disability." *See Charles B.,* 194 Ariz. at 175, ¶ 3, 978 P.2d at 660.

¶ 19 Although the State concedes that the juvenile incompetency definition does not specifically require an underlying mental disease, defect or disability, it argues that other provisions of the juvenile competency statutes imply that a finding of competence must be based on "something more tha[n] normal 'developmental immaturity.' " For example, the State cites A.R.S. § 8–291.07.C, which states that if a mental health expert determines that a juvenile is incompetent to stand trial, the expert must issue a report specifying the nature of any mental disease, defect or disability causing the juvenile's incompetency. Also, according to the State, the reference to civil commitment proceedings and

---

**2.** Because we conclude that Dr. Potts did not only rely on an adult standard in evaluating the juveniles' competency, we do not consider the State's argument that other jurisdictions have rejected applying adult competency standards.

outpatient or inpatient treatment in A.R.S. §§ 8–291.07.C, –291.08.D, –291.09.A and – 291.10.H all relate to a presupposition of an underlying mental disease, defect or disability.

¶ 20 We reject the State's argument that the juvenile incompetency definition requires finding an underlying mental disease, defect or disability because certain sections of the juvenile competency statutes discuss mental disease, defect and disability. First, we are able to resolve the apparent conflict between the juvenile incompetency definition and the statutes that the State cites because those statutes direct that *if* a juvenile has been found incompetent because of a mental illness, defect or disability, information related to that finding is required to be reported; notably, these statutes do not require an initial finding of a mental disease, defect or disability.

¶ 21 Second, by comparing the juvenile incompetency definition to the adult competency statutes, *see* A.R.S. §§ 13–4501 to – 4517 (2001 & Supp.2005), we conclude that the legislature's desire to prohibit *any* incompetent child from participating in proceedings, regardless of the child's mental condition, is clear. Section 13–4501(2) of the adult competency statute states: " 'Incompetent to stand trial' means that *as a result of mental illness, defect or disability* a defendant is unable to understand the nature and object of the proceeding or to assist in the defendant's defense." (Emphasis added); *see also* Ariz. R.Crim. P. 11.1 ("A person shall not be tried, convicted, sentenced or punished for a public offense ... while, *as a result of a mental illness, defect or disability,* the person is unable to understand the proceedings against him or her or to assist in his or her own defense.") (Emphasis added). In contrast, the plain language of the juvenile incompetency definition does not require an incompetent child to be mentally ill or disabled. *See* A.R.S. § 8–291(2); *Ariz. Dep't of Revenue v. Gen. Motors Acceptance Corp.,* 188 Ariz. 441, 445, 937 P.2d 363, 367 (App. 1996) ("Where the legislature has used a particular term in one place in a statute and has excluded it in another place in the same statute, a court should not read that term into the provision from which the legislature has not chosen to omit it.")

¶ 22 Furthermore, in *Charles B.,* this court recognized that although the juvenile court found the juvenile to be a "normal" eleven-year-old juvenile with no mental disorders or disabilities, "he fit the definition of 'incompetent' under the statute because he lack[ed] a present ability to consult with his attorney with a reasonable degree of rational understanding, and he [did] not have a reasonable degree of rational and factual understanding of the proceeding against him...." 194 Ariz. at 175, ¶ 3, 978 P.2d at 660 (citation omitted). Although the question of Charles B.'s incompetency was not before the court, it is the central question in this case. The State has argued that this language is dicta. We agree but conclude that the *Charles B.* definition of "incompetent" is a correct statement of the juvenile incompetency statutes.

¶ 23 We therefore conclude that the trial court did not err in not requiring an underlying disease, defect or disability to determine the juveniles' competency.

## CONCLUSION

¶ 24 Because the juvenile court properly considered all of the evidence and correctly interpreted the juvenile competency statutes, we conclude that it did not abuse its discretion in finding the juveniles incompetent and not restorable to competency within the statutory period. We therefore affirm the court's incompetency findings and order dismissing the delinquency petitions.

CONCURRING: ANN A. SCOTT TIMMER and SHELDON H. WEISBERG, Judges.