[No. C052781. Third Dist. May 10, 2007.]

TIMOTHY J., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[No. C052711. Third Dist. May 10, 2007.]

DANTE H., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Paulino G. Duran, Public Defender, Arthur L. Bowie and Chet Templeton, Assistant Public Defenders, for Petitioner Timothy J.

Paulino G. Duran, Public Defender, Arthur L. Bowie and Stephanie Paisley, Assistant Public Defenders, for Petitioner Dante H.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson and Mary Jo Graves, Assistant Attorneys General, Charles A. French and Angelo S. Edralin, Deputy Attorneys General, for Real Party in Interest in No. 52781.

Bill Lockyer, Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross, Charles A. French and Angelo S. Edralin, Deputy Attorneys General, for Real Party in Interest in No. 52711.

## Opinion

**BLEASE, Acting P. J.**—In this consolidated writ proceeding,[1] 11-year-old Dante H. (Dante) and 13-year-old Timothy J. (Timothy) seek review of the denial of their petitions for writ of mandate and requests for stay of juvenile delinquency proceedings in the juvenile court. (Welf. & Inst. Code, § 602.) They ask that we overrule the court's rejection of their claims of incompetency to stand trial under California Rules of Court, former rule 1498(d) (hereafter rule 1498(d)).[2] We issued an order to show cause pursuant to the order of the Supreme Court.

Rule 1498(d) requires the juvenile court to stay the proceedings and conduct a hearing regarding the minor's competency to stand trial if the court finds a reason to doubt that the minor who is the subject of a petition filed under section 602 of the Welfare and Institutions Code (602 petition) "is capable of understanding the proceedings or of cooperating with the child's attorney . . . ." It directs that "[i]f the court finds that the child is not capable of understanding the proceedings or of cooperating with the attorney, the court shall proceed under [Welfare and Institutions Code] section 6550 and sections (a)–(c) of this rule." (Rule 1498(d)(2).) Sections (a) through (c) provide procedures upon a finding the child is mentally ill, mentally disabled, or mentally disordered.

---

[1] The court consolidated the two cases on October 2, 2006, on its own motion.

[2] Rule 1498 was amended and renumbered as rule 5.645, effective January 1, 2007.

The juvenile court in both cases ruled that to be found incompetent under rule 1498(d), the minor must have a mental disorder or developmental disability and here both minors based their claim of incompetency on their age-related developmental immaturity.

As we shall explain, we construe rule 1498(d) consistent with the constitutional test of competency stated in *Dusky v. United States* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788] (*Dusky*) and hold that the rule does not require that a minor have a mental disorder or developmental disability before the juvenile court may hold a hearing to determine whether, or find after holding a hearing that, the minor is incompetent to stand trial.

We therefore shall issue peremptory writs of mandate directing the juvenile court to vacate its prior rulings and reconsider the minors' claims in light of our holding.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Dante*

On June 25, 2005, Dante H. and two other minors broke windows at the Woodbridge Elementary School and took food items from the gymnasium. Dante and the other two minors confessed at the scene. An original 602 petition was filed alleging that Dante committed one count of second degree burglary. (Pen. Code, § 459.) At the arraignment on December 20, 2005, the court declared a doubt as to Dante's competency, appointed a psychologist pursuant to rule 1498(d), and ordered Dante to submit to a psychological evaluation.

The court appointed Psychologist Lisa Boal Perrine, Ph.D. (Dr. Perrine), who interviewed Dante and filed a report concluding that he was incompetent to stand trial and was not likely to achieve competence for a year or more. According to Dr. Perrine, Dante, who was 11 years old at the time of the interview,[3] lived with his parents and two siblings, was enrolled in the sixth grade and had never been enrolled in special education classes. Although there was some confusion concerning Dante's grades, which may have deteriorated somewhat, he generally received grades of A's and B's. In addition, he had no known criminal history or any mental health or behavioral problems.

When Dr. Perrine asked Dante if he understood the court proceedings, he replied, "no" although he said he knew he had been charged with burglary

---

[3] Dante was born in September 1994.

which he thought was a misdemeanor and knew that a felony is more serious than a misdemeanor. He said in order to commit a burglary, someone would have to "break in somewhere." He believed that "not guilty" meant the person is "not accountable for what the people think they did" and "guilty" means "the person being accused did something and will have to suffer the consequences." If a person is found not guilty "they go free," if the person is found guilty as charged, the possible sentence would be "community service" which he would serve at his church. Dante thought probation meant "you have to ask the [probation] officer to do stuff like play football."

With the exception of witnesses, Dante did not understand the functions of the court participants and thought his chances of being found not guilty were "zero out of 100." He did not know what plea he planned on entering, nor did he know what rights he would have to give up in order to get a plea bargain. Dante told Dr. Perrine that he had an attorney, that he had confidence in his attorney, and he thought he could help his attorney "by trusting in him." He did not know what he should do if he disagreed with his attorney. Dante stated that he remembered everything that happened, would be expected to tell his attorney everything he knows and remembers, and expected no difficulty doing so.

Dr. Perrine's report indicates that Dante would defer to his parents or his attorney to make decisions regarding his case, that if he disagreed with them, he would not be able to stand up for himself, and that he is not able to appreciate the long-term effects of his decisions. Dr. Perrine also found that Dante was currently experiencing a mental "adjustment disorder," which included "depressive symptoms manifested in behavioral problems, impaired decision-making abilities, difficulties managing his emotions, and limited ability to think clearly."

At the contested hearing, the juvenile court received into evidence the written competency evaluations of Dr. Perrine and Dr. Daniel Edwards, who had been retained by defense counsel. The court also heard their testimony. Dr. Perrine's testimony was consistent with her report. She opined that Dante did not have the ability to effectively work with his attorney to prepare this case because as a result of his age, he had not reached the developmental stage where he could process information, make sense of it, and develop a preferred decisionmaking strategy.

Dr. Edwards, a clinical and forensic neuropsychologist, reported that Dante's I.Q. is 102, which he classified as average. Dr. Edwards found Dante was performing in the normal range for his age with no psychological problems or personality disorders. As an 11 year old, Dante had little or no concept of the future, so the idea of prolonged punishment or supervision had

no meaning to him and because he had not yet developed a desire to be independent of his parents, the impositions of physical restrictions would not have the same meaning and effect on him as it would have on an adult. Dante was also unable to explain what a trial is or what his rights are. Dr. Edwards concluded that "these abstract concepts are still beyond his appreciation developmentally" and opined that Dante's "competency to stand trial is limited by his developmental level . . . ."

Dr. Edwards explained that the brain of a young child has mildly developed frontal lobes. As the person reaches puberty around the ages of 11, 12, and 13, the myelination process[4] takes place in the frontal lobes and the individual begins to develop the ability to think logically, abstractly, and to have a sense of the future. Dante's developmental level limited his ability to think in those terms. Dr. Edwards concluded that Dante was incompetent to stand trial because he was unable to understand the issues, including the role of the courtroom participants, and the nature of the punishment.

The juvenile court found Dante had failed to meet his burden of proof, which in the court's view, required that Dante establish "by a preponderance of evidence that he suffers from a mental disorder or developmental disability that impairs his ability to understand the nature of the delinquency proceedings or to assist or cooperate with counsel with his defense in a rational manner." The court found unpersuasive the opinions of both experts. Dr. Perrine's opinion was based on an unsubstantiated adjustment disorder and on Dante's developmental immaturity while Dr. Edwards's opinion was based on Dante's age, his lack of maturity, and his inability to think in abstract terms.

On May 25, 2006, Dante filed a petition for writ of mandate and a request for immediate stay of the juvenile proceedings. This court denied the petition on June 1, 2006. However, on June 12th, Dante filed a petition for review in the California Supreme Court, which granted the petition, issued a stay of the juvenile proceedings, and transferred the matter back to this court, with directions to vacate our order denying mandate and to issue an alternative writ. We complied with the order by issuing an alternative writ of mandate on August 4, 2006.

B. *Timothy*

On May 25, 2005, an amended original 602 petition was filed alleging that Timothy, age 12, had entered Fern Bacon Elementary School after being suspended from the school (Pen. Code, § 626.2) and stole personal property

---

[4] During the myelination process, myelin sheaths form around nerve fibers in the brain providing insulation for the nerve cells. As this process advances, the person develops more and more skill levels and abilities.

from the premises (Pen. Code, § 484, subd. (a)). The court placed Timothy on informal probation, which was extended when he failed to complete the specified terms and conditions. A subsequent 602 petition was filed on February 7, 2006, alleging that Timothy possessed a knife with a three-inch blade on school grounds. (Pen. Code, § 626.10, subd. (a).)

On March 28, 2006, Timothy's counsel requested that the juvenile court declare a doubt as to the minor's competency to stand trial. (Rule 1498(d).) Counsel informed the court that Timothy had just turned 12, that when counsel asked him what a trial was or what its purpose was, Timothy responded "[w]hen you do something bad. I don't know.". Counsel then advised the court that neither he nor Timothy's mother believed the minor understood or knew the gravity of his situation, the potential consequences of his acts, or what probation is. Timothy had an individualized education program (IEP),[5] was in special education classes, and read a couple of grade levels below normal for his age. When the court asked whether Timothy had a mental disorder or developmental disability, Timothy's mother advised the court that Timothy had obedience defiant disorder (ODD)[6] and attention deficit disorder (ADD). The court also had before it a probation report, which indicated that Timothy had been diagnosed with attention-deficit/hyperactivity disorder (ADHD).[7] The court subsequently denied the request.

Counsel renewed his request on May 9, 2006, proffering recent school records, which indicated that Timothy had a learning disability related to attention, visual processing, and cognitive abilities. The records also showed he was not participating in any curriculum or academic classes because of significant learning delays due to his disabilities. The court again denied the request on the grounds Timothy did not have a mental disorder and that an attention problem was not a mental disability.

---

[5] An IEP is an " '[i]ndividualized education program,' " which is a "written document . . . for an individual with exceptional needs that is developed, reviewed, and revised in a meeting in accordance with Sections 300.340 to 300.350, inclusive, of Title 34 of the Code of Federal Regulations and this part." (Ed. Code, § 56032.) Title 34 Code of Federal Regulations part 300.340 was repealed effective August 14, 2006. (See 71 Fed.Reg. 46540, 46753 (Aug. 14, 2006).)

[6] ODD is listed in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. text rev. 2000) (hereafter DSM-IV-TR), which describes the essential feature of the disorder as "a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least 6 months . . . and is characterized by the frequent occurrence" of at least four listed behaviors. (*Id.* at p. 100.)

[7] ADHD is a disorder that may cause impairment and is defined as a "persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequently displayed and more severe than is typically observed in individuals at a comparable level of development." (DSM-IV-TR, *supra*, at p. 85.)

On June 2, 2006, Timothy filed a petition for writ of mandate and request for stay of the juvenile proceedings. We granted the stay on June 8 and issued an alternative writ of mandate on July 31, 2006.

## DISCUSSION

Both Dante and Timothy contend the juvenile court erred in denying their requests for a determination of incompetency because in both cases the court's ruling was based on the ground that neither minor had a mental disorder or developmental disability. The minors argue that under rule 1498(d), there is no need to find a mental disorder or developmental disability and that a minor may be found incompetent on the basis of developmental immaturity alone.

■ Rule 1498(d) requires the juvenile court to stay the proceedings and conduct a hearing into the child's competency if the court finds there is reason to doubt that the "child who is the subject of a petition filed under section 601 or 602 is capable of understanding the proceedings or of cooperating with the child's attorney . . . ." As noted, it directs that "[i]f the court finds that the child is not capable of understanding the proceedings or of cooperating with the attorney, the court shall proceed under [Welfare and Institutions Code] section 6550 and sections (a)–(c) of this rule." (Rule 1498(d)(2).) Sections (a) through (c) provide procedures upon a finding the child is mentally ill, mentally disabled, or mentally disordered.

The Attorney General representing real party in interest in both cases fails to address the legal question raised by the minors. Instead, he argues in his answer to Dante's petition that Dante failed to meet his burden of proof and that the juvenile court was within its discretion when it found the experts' opinions unpersuasive. The Attorney General further contends that Penal Code section 26 provides the appropriate procedure for raising Dante's age-based incompetency claim.

In his informal response to Timothy's petition, the Attorney General argues that a petition for writ of mandate is not the appropriate vehicle to challenge the juvenile court's decision because mandate is not available to compel a discretionary act[8] and that Timothy has failed to show the court acted beyond its jurisdiction or abused its discretion.

---

[8] We summarily reject this argument. Mandate lies to control the exercise of judicial discretion when that discretion has been abused (*Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834 [37 Cal.Rptr.3d 759]) or when the trial court failed to exercise it because it misperceived the law. (*Richter v. Superior Court* (1963) 214 Cal.App.2d 821, 825 [29 Cal.Rptr. 826]; *Nadler v. Superior Court* (1967) 255 Cal.App.2d 523, 525 [63 Cal.Rptr. 352]; 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 110, p. 899.) Here, the juvenile court denied Timothy's request for a competency hearing because in its view, such a hearing

■ We agree with the minors and hold that rule 1498(d) does not require that a minor have a mental disorder or developmental disability before a hearing may be held or a finding made of incompetency.

■ It is well established that the criminal trial of an incompetent defendant violates the due process clause of the state and federal Constitutions. (*Medina v. California* (1992) 505 U.S. 437, 453 [120 L.Ed.2d 353, 368, 112 S.Ct. 2572]; *Pate v. Robinson* (1966) 383 U.S. 375, 377–378 [15 L.Ed.2d 815, 817–818, 86 S.Ct. 836]; *People v. Jenkins* (2000) 22 Cal.4th 900, 1002 [95 Cal.Rptr.2d 377, 997 P.2d 1044].) Because this principle is fundamental to our adversary system of justice (*Drope v. Missouri* (1975) 420 U.S. 162, 172 [43 L.Ed.2d 103, 113, 95 S.Ct. 896]), the high court has held that failure to employ procedures to protect against the trial of an incompetent defendant is a deprivation of due process. (*Pate v. Robinson, supra,* 383 U.S. at p. 385 [15 L.Ed.2d at p. 822]; *Drope v. Missouri, supra,* 420 U.S. at p. 172 [43 L.Ed.2d at p. 113].)

The standard for determining a defendant's competency to stand trial was set forth in *Dusky, supra,* 362 U.S. 402 [4 L.Ed.2d at p. 825]. Under that standard, the inquiry is whether the defendant " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " (*Ibid.*)

Subsequent to *Dusky*, the high court extended the rights of due process to juvenile delinquency proceedings (*In re Gault* (1967) 387 U.S. 1, 31–57 [18 L.Ed.2d 527, 548–563, 87 S.Ct. 1428]), including the right to the effective assistance of counsel. (*Kent v. United States* (1966) 383 U.S. 541, 554 [16 L.Ed.2d 84, 93, 86 S.Ct. 1045].)

To preserve those rights, the court in *James H. v. Superior Court* (1978) 77 Cal.App.3d 169 [143 Cal.Rptr. 398] (*James H.*) held that a minor has the right to a competency hearing in a delinquency proceeding. (*Id.* at pp. 174–175.) The court found that in the absence of any statutory procedure, "the juvenile court has the inherent power to determine a minor's mental competence to understand the nature of [the] proceedings pending under Welfare and Institutions Code section 707, subdivision (b) and to assist counsel in a rational manner at that hearing." (*Id.* at p. 172.)

Fashioning a procedure to make that determination, the court in *James H.* instructed that if the juvenile court entertains a reasonable doubt as to the

was not required under rule 1498(d) if the minor failed to show he was suffering from a mental disorder or developmental disability. In light of our holding, that view is incorrect. Mandate is therefore the proper procedure for challenging the juvenile court's ruling.

minor's competency, it should suspend proceedings and conduct a hearing into the question of the minor's present competence. The court further advised that the juvenile court "may borrow from Penal Code section 1367 and use as a yardstick the definition of incompetency set forth in that section . . . . [*o*]*r* the court may be guided by the statement of the United States Supreme Court in *Dusky, supra* . . . ." (*James H., supra*, 77 Cal.App.3d at pp. 176–177, italics added.)

Rule 1498 was adopted in 1999 to conform to *James H.* (See Advisory Com. com., 23 pt. 3 West's Ann. Court Rules (2005) foll. rule 1498, p. 630.) Consistent with that decision, rule 1498(d) requires the juvenile court to stay the proceedings and conduct a hearing into the child's competency if the court finds there is reason to doubt that the "child who is the subject of a petition filed under section 601 or 602 is capable of understanding the proceedings or of cooperating with the child's attorney . . . ."[9]

■ The question before us is whether a mental disorder or developmental disability is an elemental requirement under rule 1498(d). When construing the California Rules of Court, we apply the usual principles of statutory construction, looking first to the words of the rule to determine the drafters' intent and when the language of the rule is clear and unambiguous, we need not probe the rule's drafting history. (*Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 265 [22 Cal.Rptr.3d 696].) However, as with a statute, where reasonably possible, we must construe rule 1498(d) to avoid doubts as to its constitutionality. (*In re Howard N.* (2005) 35 Cal.4th 117, 134 [24 Cal.Rptr.3d 866, 106 P.3d 305]; *People v. Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149].)

■ The test stated in rule 1498(d), whether the child "is capable of understanding the proceedings or of cooperating with the child's attorney," is similar to, albeit an abbreviated version of, the *Dusky* test, and like *Dusky*, the test itself makes no mention of a mental disorder or developmental disability.

---

[9] Rule 1498(d) states "(d) If the court finds that there is reason to doubt that a child who is the subject of a petition filed under section 601 or 602 is capable of understanding the proceedings or of cooperating with the child's attorney, the court shall stay the proceedings and conduct a hearing regarding the child's competence.

"(1) The court may appoint an expert to examine the child to evaluate the child's capacity to understand the proceedings and to cooperate with the attorney;

"(2) If the court finds that the child is not capable of understanding the proceedings or of cooperating with the attorney, the court shall proceed under section 6550 and sections (a)–(c) of this rule.

"(3) If the court finds that the child is capable of understanding the proceedings and of cooperating with the attorney, the court shall proceed with the case."

However, rule 1498(d)(2) directs that "[i]f the court finds that the child is not capable of understanding the proceedings or of cooperating with the attorney, the court shall proceed under [Welfare and Institutions Code] section 6550 and sections (a)–(c) of this rule." Sections (a) through (c) provide procedures upon a finding the child is mentally ill, mentally disabled, or mentally disordered. There is no specific provision for a child found to be developmentally immature.

Welfare and Institutions Code section 6550,[10] on the other hand, makes no mention of a "mental disorder or developmental disability." Rather, it uses the terms "mental health or the *mental condition* of the person," (*ibid.*, italics added) despite the fact section 6551, which is in the same article as section 6550, provides for the evaluation and treatment of a person who is "mentally disordered or mentally retarded."

The dictionary defines the word "condition" variously to mean "4: a mode or state of being . . . with reference to mental or moral nature, temperament, character, or disposition" or "5: quality, attribute, trait." (Webster's 3rd New Internat. Dict. (1971) p. 473.) Under these definitions, although the term "mental condition" certainly includes mental disorder or mental retardation, which as noted is a developmental disability (Pen. Code, § 1370.1, subd. (a)(1)(H)), we see no difference between a condition that results from a developmental disability and one that results from developmental immaturity.

As noted, rule 1498 was intended to conform to *James H.* (see Advisory Com. com., 23 pt. 3 West's Ann. Court Rules, *supra,* at p. 630), which referred the juvenile court to the definition of incompetency stated in Penal Code section 1367 *or* the test stated in *Dusky.* (*James H., supra,* 77 Cal.App.3d at p. 177.) Although Penal Code section 1367 defines mental incompetency as a "mental disorder or developmental disability" (Pen. Code, § 1367, subd. (a)), the test stated in *Dusky* does not. Indeed, the court in *James H.* recognized that the "legal pigeonhole of 'mentally disordered' is not identical with the test of mental competency to aid counsel . . . ." (*James H., supra,* 77 Cal.App.3d at p. 177.)[11]

---

[10] Welfare and Institutions Code section 6550 states: "If the juvenile court, after finding that the minor is a person described by Section 300, 601, or 602, is in doubt concerning the state of mental health or the mental condition of the person, the court may continue the hearing and proceed pursuant to this article."

[11] Although the court in *James H.* stated that in its view, the tests of incompetency in Penal Code section 1367 and *Dusky* are virtually identical, the minor in *James H.* was mentally retarded (*James H., supra,* 77 Cal.App.3d at pp. 172, 177) and mental retardation is classified as a mental disorder. (Pen. Code, § 1370.1, subd. (a)(1)(H).) To the extent the court's remark suggests that a mental disorder or developmental disability is a predicate to a finding of incompetency under *Dusky,* the remark is dicta.

The question before us is one of first impression, although a few appellate courts in other jurisdictions have concluded that a juvenile may be found incompetent to stand trial based upon his or her developmental immaturity without a finding of mental disorder or developmental disability. (See *In re Hyrum H.* (2006) 212 Ariz. 328 [131 P.3d 1058] [10 year old]; *Tate v. State* (Fla. 2003) 864 So.2d 44 [12 year old]; *In re W.A.F.* (D.C. 1990) 573 A.2d 1264, 1266.)

Returning to *Dusky*, the test stated there does not define incompetency in terms of mental illness or disability. (*Dusky, supra,* 362 U.S. 402 [4 L.Ed.2d at p. 825]; *United States v. Zovluck* (S.D.N.Y. 1977) 425 F.Supp. 719, 721.) Moreover, the court stated that "it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events.' " (*Dusky, supra,* 362 U.S. 402 [4 L.Ed.2d at p. 825].) The question is cognitive, whether the defendant's mental condition is such that he or she lacks that degree of rationality required by law (*United States v. Adams* (S.D.N.Y. 1969) 297 F.Supp. 596, 597) so as to have "the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." (*Odle v. Woodford* (9th Cir. 2001) 238 F.3d 1084, 1089.)

As a matter of law and logic, an adult's incompetence to stand trial must arise from a mental disorder or developmental disability that limits his or her ability to understand the nature of the proceedings and to assist counsel. (See Pen. Code, § 1367, subd. (a).) The same may not be said of a young child whose developmental immaturity may result in trial incompetence despite the absence of any underlying mental or developmental abnormality.

Dr. Edwards testified that minors are different from adults because their brains are still developing and as myelination occurs during puberty, the minor develops the ability to think logically and abstractly then. Both experts concluded that because of his age, Dante's brain has not fully developed and he was unable to think in those ways.

 Their conclusions are supported by the literature, which indicates that there is a relationship between age and competency to stand trial and that an adolescent's cognitive, psychological, social, and moral development has a significant biological basis. (Steinberg, *Juveniles on Trial: MacArthur Foundation Study Calls Competency Into Question* (2003) 18 Crim. Just. 20, 21.)[12] While many factors affect a minor's competency to stand

---

[12] According to Steinberg, the frontal lobes oversee high-level cognitive tasks such as hypothetical thinking, logical reasoning, long-range planning, and complex decisionmaking. During puberty, that area of the brain matures as the myelination process takes place. (Steinberg, 18 Crim. Just., *supra,* at p. 20.)

trial,[13] "the younger the juvenile defendant, the less likely he or she will be to manifest the type of cognitive understanding sufficient to satisfy the requirements of the *Dusky* standard." (Baerger et al., *Competency to Stand Trial in Preadjudicated and Petitioned Juvenile Defendants* (2003) 31 J. of Am. Academy of Psychiatry and L. 314, 318; see Burnett et al., 31 Crim. Just. and Behavior, *supra*, pp. 438, 441, 457, 461; Grisso et al., 27 L. and Human Behavior, *supra*, p. 333.)[14]

Certainly no one would dispute that a three-year-old child would be incompetent to stand trial because of his or her cognitive inability to understand the proceedings or to assist his or her attorney in preparing a defense. Thus, for purposes of determining competency to stand trial, we see no significant difference between an incompetent adult who functions mentally at the level of a 10 or 11 year old due to a developmental disability and that of a normal 11 year old whose mental development and capacity are likewise not equal to that of a normal adult. Under either condition or state, the test is " 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " (*Dusky, supra*, 362 U.S. 402 [4 L.Ed.2d at p. 825].) However, as has been observed in the context of a child's competency to testify, " '[t]here is no precise age which determines the question of competency.' " (*Kentucky v. Stincer* (1987) 482 U.S. 730, 741, fn. 11 [96 L.Ed.2d 631, 645, 107 S.Ct. 2658].) Because it is affected by many factors (Burnett et al., 31 Crim. Just. and Behavior, *supra,* at p. 461; Grisso, 27 L. and Human Behavior, *supra*, at pp. 345–346), the same may also be said in determining trial competency. Thus, we do not hold that age alone may be the basis for a finding of incompetency. We hold only that rule 1498(d) does not require that the minor have a mental disorder or developmental disability before a doubt may be raised or a finding made that he is incompetent to stand trial.

Nevertheless, the Attorney General contends that Penal Code section 26 rather than rule 1498(d) is the proper avenue to raise an age-based challenge to a minor's competency to stand trial. We disagree.

---

[13] The research indicates that such factors as age, intelligence level, mental health history and severity of diagnosis, history of remedial education, and prior arrest or justice system history are relevant in determining a minor's trial competency. (Burnett et al., *Adjudicative Competency in a Juvenile Population* (2004) 31 Crim. Just. and Behavior 438, 461; Grisso et al., *Juveniles' Competence to Stand Trial: A Comparison of Adolescents' and Adults' Capacities as Trial Defendants* (2003) 27 L. and Human Behavior 333, 345–346.)

[14] One researcher found that 30 percent of the 11 to 13 year olds, and 19 percent of the 14 and 15 year olds, performed at the level of mentally ill adults who have been found incompetent to stand trial in matters of understanding and reason. (Steinberg, 18 Crim. Just., *supra,* p. 21; see also Grisso et al., 27 Law and Human Behavior, *supra*, p. 356; Baerger et al., 31 J. of Am. Academy of Psychiatry and L., *supra*, pp. 314–315.)

■ Penal Code section 26 provides that "[a]ll persons are capable of committing crimes except . . . [¶] . . . [c]hildren under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." This section states a presumption that a minor under the age of 14 is incapable of committing a crime. (*In re Marven C.* (1995) 33 Cal.App.4th 482, 486 [39 Cal.Rptr.2d 354].) The People have the burden of establishing by clear proof that a minor under the age of 14 appreciated the wrongfulness of his or her criminal act "as demonstrated by [his or her] age, experience, conduct, and knowledge . . . ." (*In re Manuel L.* (1994) 7 Cal.4th 229, 231–232 [27 Cal.Rptr.2d 2, 865 P.2d 718].) By contrast, the inquiry under rule 1498(d) is made before trial and the question is whether the minor is capable of understanding the proceedings and of cooperating with counsel. Suffice it to say, those two inquiries are different. While some of the same factors may be relevant to both, the purpose and focus of the two inquiries are different as are the time and procedures for determining them.

Here the juvenile court in Dante's case applied a standard that required evidence of a mental disorder or developmental disability. Although there may be substantial evidence to support the court's ruling, having rejected two expert opinions to the contrary after applying the wrong standard, the court's ruling is not entitled to be reviewed under the deferential substantial evidence test. Similarly, in Timothy's case, the juvenile court refused to express a doubt as to the minor's competency because the minor failed to show he had a mental disorder or developmental disability. In both cases, because the juvenile court did not have the benefit of our decision, it decided the question of competency using the wrong standard. We shall therefore reverse the juvenile court's order in both cases and remand for further proceedings consistent with this opinion.

## DISPOSITION

In Dante H. (C052711), we shall lift the stay, discharge the alternative writ, and issue a peremptory writ directing the juvenile court to vacate its ruling finding the minor competent and its order setting the matter for a contested jurisdictional hearing, and direct the juvenile court to stay the proceedings and conduct another hearing pursuant to California Rules of Court, rule 1498(d).

In Timothy J. (C052781), we also lift the stay, discharge the alternative writ, and issue a peremptory writ directing the juvenile court to vacate its ruling denying the minor's request under California Rules of Court, rule 1498(d) and reconsider the request under that rule.

Morrison, J., and Butz, J., concurred.

A petition for a rehearing was denied May 31, 2007.