**UNITED STATES of America,
Plaintiff,**

v.

**James Howard BENTLEY, Defendant.**

**No. 06–CR–155–LRR.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

June 25, 2007.

Sean R. Berry, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiff.

**SENTENCING MEMORANDUM**

READE, Chief Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................... 1052

II.  RELEVANT PROCEDURAL BACKGROUND .............................. 1052

III. THREE–STEP PROCESS ......................................... 1053

IV.  THE ISSUES ................................................. 1054

V.   CONSTITUTIONAL ISSUES ...................................... 1054
     A.  Burden of Proof—Fifth Amendment ...................... 1054
     B.  Videotaped Interviews—Sixth Amendment ................ 1055

VI.  ADVISORY SENTENCING GUIDELINES ISSUES ...................... 1056
     A.  Victims Under the Age of Twelve—USSG § 2G2.1(b)(1)(A) ... 1056
     B.  Victims Under Defendant's Custody, Care or Supervisory Control—
         USSG § 2G2.1(b)(2) ................................... 1057
     C.  Exploitation of More Than One Minor—USSG § 2G2.1(c)(1) ... 1057
     D.  Vulnerable Victim—USSG § 3A1.1(b)(1) ................. 1058
     E.  Acceptance of Responsibility—USSG § 3E1.1 ............ 1059
     F.  Repeat and Dangerous Sex Offender—USSG § 4B1.5 ....... 1060
     G.  Substantially Under–Represented Criminal History–USSG § 4A1.3 ....... 1061

VII. CONCLUSION ................................................. 1061

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant James Howard Bentley.

## II. RELEVANT PROCEDURAL BACKGROUND

On February 7, 2007, Defendant was charged in a six-count Second Superseding Indictment (docket no. 54).[1] Counts 1 and 2 charged Defendant with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e). Counts 3 and 4 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Counts 5 and 6 charged Defendant with Interstate Transportation of Child Pornography, in

violation of 18 U.S.C. § 2252A(a)(1) and (b)(1).

On March 1, 2007, after a three-day trial,[2] a unanimous federal jury found beyond a reasonable doubt that Defendant was guilty on all six counts. With respect to Counts 1, 3 and 5, the jury found that Defendant produced, possessed and transported sexually explicit photographs of a ten-year-old girl, J.G. With respect to Counts 2, 4 and 6, the jury found that Defendant produced, possessed and transported sexually explicit photographs of J.G.'s infant sister, L.G.

On May 10, 2007, the United States Probation Office filed a Presentence Investigation Report ("PSIR"). On June 4,

---

1. On November 17, 2006, Defendant was charged in a four-count Indictment (docket no. 2). On January 10, 2007, Defendant was charged in a six-count Superseding Indictment (docket no. 21).

2. Ten witnesses testified against Defendant. Two of the witnesses, A.J. and C.T., testified

that Defendant sexually abused them when they were young girls. The court permitted A.J. and C.T. to testify, pursuant to Federal Rule of Evidence 414. *See generally United States v. Bentley*, 475 F.Supp.2d 852 (N.D.Iowa 2007).

2007, Defendant filed a sentencing memorandum. On June 5, 2007, Defendant supplemented his sentencing memorandum. On June 6, 2007, the government filed its sentencing memorandum.

On June 12, 2007, the court held a sentencing hearing ("Hearing"). Assistant United States Attorney Sean R. Berry represented the government. Attorney Mark R. Brown represented Defendant, who was personally present. At the Hearing, the court pronounced sentence in a manner consistent with the instant Sentencing Memorandum.[3]

## III. THREE–STEP PROCESS

The Sentencing Guidelines are no longer mandatory. *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir.) (discussing *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)), *cert. denied*, 126 S.Ct. 276 (2005). They are advisory. *Id.* The Eighth Circuit Court of Appeals has explained that, in the post-*Booker* world, "there are essentially three steps to determining an appropriate sentence." *United States v. Sitting Bear*, 436 F.3d 929, 934 (8th Cir.2006).

First, the district court should determine the applicable Sentencing Guidelines range without consideration of any [Sentencing] Guidelines departure factors, because the [Sentencing] Guidelines remain an important sentencing factor. *See* 18 U.S.C. § 3553(a)(4). Second, the district court, where appropriate, should consider the departure provisions contained in Chapter 5, Part K and/or § 4A1.3 of the [Sentencing] Guidelines, as those sentencing provisions have not been excised by *Booker*. The resulting range is the post-*Booker* advisory [Sentencing] Guidelines range. Third, the district court should consider the rest of the § 3553(a) factors in determining whether to impose the "Guidelines sentence" as determined in the prior steps or a "non-Guidelines sentence" driven by the other § 3553(a) considerations, and sentence the defendant accordingly. *Haack*, 403 F.3d at 1003; *see also United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir.2006) (reviewing the sentence imposed by the district court under the three-part *Haack* methodology).

---

**3.** At the Hearing, the court informed the parties that it would file a written sentencing memorandum within a couple of weeks. The court then deferred the entry of judgment until the filing of the instant Sentencing Memorandum.

The instant Sentencing Memorandum is primarily designed to provide a more detailed understanding of the court's reasoning on the constitutional issues and some of the contested advisory Sentencing Guidelines issues; it is not comprehensive. For example, the court's analysis of the factors at 18 U.S.C. § 3553(a) is outside the scope of this document. The Supreme Court recently stated:

The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word

"granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Rita v. United States*, —— U.S. ——, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). What is important is that "[t]he sentencing judge ... set forth enough to satisfy the appellate court that [she] has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." *Id.* (citing *United States v. Taylor*, 487 U.S. 326, 336–37, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)). Less explanation is necessary where, as here, the court sentences within the advisory Sentencing Guidelines range and does not grant a motion for a downward departure or variance. *Id.*

*Id.* at 934–35. At the Hearing, the court adhered to this three-step process.[4]

## IV.   THE ISSUES

At the Hearing, there were a large number of contested issues, including two constitutional issues and seven advisory Sentencing Guidelines issues.

The two constitutional issues were (1) whether, under the Due Process Clause of the Fifth Amendment to the United States Constitution, the court should make its factual findings by a preponderance of the evidence or by clear and convincing evidence and (2) whether, under the Confrontation Clause of the Sixth Amendment to the United States Constitution, the court may consider the videotaped statements of J.G. and A.M.

With respect to the advisory Sentencing Guidelines issues, the court considered whether it should (1) apply a four-level enhancement, pursuant to USSG § 2G2.1(b)(1)(A) (2003),[5] because Defendant's victims "had ... not attained the age of twelve years"; (2) apply a two-level enhancement, pursuant to USSG § 2G2.1(b)(2), because Defendant's victims were in his "custody, care, or supervisory control"; (3) apply the Special Instruction at USSG § 2G2. 1(c)(1), because Defendant's "offense involved the exploitation of more than one minor"; (4) apply a two-level enhancement, pursuant to USSG § 3A1.1, because Defendant's victims were "vulnerable victims"; (5) apply a two-level decrease, pursuant to USSG § 3E1.1, for acceptance of responsibility; (6) apply an enhancement, pursuant to USSG § 4B1.5, for being a repeat and dangerous sex of-fender; and (7) depart upward, pursuant to USSG § 4A1.3, for substantially under-represented criminal history.

## V.   CONSTITUTIONAL ISSUES

### A.   Burden of Proof—Fifth Amendment

At the Hearing, Defendant argued that the court was required to make its factual findings under a clear-and-convincing-evidence standard. Defendant did not present the court with any legal authority in support of such standard; however, the court assumed Defendant grounded his request in the Due Process Clause of the Fifth Amendment. The government urged the court to apply a preponderance-of-the-evidence standard.

The Eighth Circuit Court of Appeals has repeatedly and unequivocally held that "due process is satisfied when sentencing facts are found by a preponderance of the evidence." *United States v. Miller*, 214 Fed.Appx. 630, 631, 2007 WL 216293 (8th Cir.2007), *petition for cert. filed*, —— U.S. ——, 127 S.Ct. 3074, —— L.Ed.2d —— (2007); *see also United States v. Johnson*, 450 F.3d 831, 833 (8th Cir.2006) ("It is clearly established in this circuit that sentencing enhancements must be proven by a preponderance of the evidence.... "). "[J]udicial fact-finding using a preponderance[-] of[-]the [-]evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner." *United States v. Bah*, 439 F.3d 423, 426 n. 1 (8th Cir.2006); *see also United States v. Garcia–Gonon*, 433 F.3d 587, 593 (8th Cir.2006) ("Under an

---

4. The so-called presumption of reasonableness that attends to the advisory Sentencing Guidelines range in the Eighth Circuit Court of Appeals played no part in the court's analysis. *See Rita v. United States*, —— U.S. ——, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007) ("[T]he presumption applies only on appellate review.").

5. The parties agree that the court should apply the 2003 version of the advisory Sentencing Guidelines. *See* PSIR ¶ 36 (citing USSG § 1B1.11(b) (2007)).

advisory [Sentencing] Guidelines regime, sentencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence.")

Accordingly, the court made its factual findings at the Hearing under a preponderance-of-the-evidence standard.

### B. Videotaped Interviews— Sixth Amendment

■ At the Hearing, the government offered into evidence Exhibit 1 and Exhibit 2. Exhibit 1 and Exhibit 2 are videotaped interviews of J.G. and A.M., respectively, at St. Luke's Hospital's Child Protection Center in Cedar Rapids, Iowa. Defendant was not present when such interviews were videotaped, and the minors did not make any sworn statements. Further, neither videotape was part of the trial record.[6] In the videotapes, J.G. and A.M. allege that Defendant sexually abused them.

Defendant objected to the admission of the videotaped interviews. Defendant argued that admitting the interviews would violate his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), Defendant claimed that he has a right to confront the witnesses against him at sentencing. The government argued that neither the Confrontation Clause nor *Crawford* apply at the time of sentencing.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. In *Crawford*, the Supreme Court held that the Confrontation Clause

bars "admission of testimonial statements of a witness who did not appear at trial unless he was unable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54, 124 S.Ct. 1354.

The Eighth Circuit Court of Appeals has repeatedly held—before and after *Crawford*—that the Confrontation Clause does not apply at sentencing. *See, e.g., United States v. Fleck*, 413 F.3d 883, 894 (8th Cir.2005); *United States v. Wallace*, 408 F.3d 1046, 1047 (8th Cir.2005); *United States v. Due*, 205 F.3d 1030, 1033 (8th Cir.2000); *United States v. Jones*, 994 F.2d 456, 459 (8th Cir.1993); *United States v. Wise*, 976 F.2d 393, 401 (8th Cir.1992) (en banc). Put simply, "*Crawford* ... 'does not alter pre-*Crawford* law that the admission of hearsay testimony at sentencing does not violate confrontation rights.'" *United States v. Brown*, 430 F.3d 942, 944 (8th Cir.2005) (quoting *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir.2005)); *see also United States v. LaChance*, No. 06–4007, 2007 WL 1051432, *1 (4th Cir. Apr.5, 2007) (unpublished per curiam decision) ("Several circuits have held that *Crawford* did not make the Confrontation Clause applicable at sentencing") (citing *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir.2006), *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir.2005), *United States v. Roche*, 415 F.3d 614, 618 (7th Cir.2005), *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir.2005) and *United States v. Martinez*, 413 F.3d 239, 243–44 (2d Cir.2005)). "As long as the out-of-court information relative to the circumstances of the crime bears an indicia of reliability, then the sentencing court can consider it without providing the defendant

---

**6.** The government did not offer either videotape at trial. *See United States v. Bentley*, 475 F.Supp.2d 852, 855 (N.D.Iowa 2007) (granting in part unresisted portion of Defendant's motion in limine and excluding videotaped interview of J.G.).

with a right to confrontation." *Wallace,* 408 F.3d at 1048.

The court found that Exhibit 1 and Exhibit 2 bear an indicia of reliability. Indeed, Exhibit 1 and Exhibit 2 are highly reliable, notwithstanding the fact that they are hearsay and Defendant did not have the opportunity to cross-examine J.G. and A.M. For example, in Exhibit 1, an adult female child protection worker interviewed J.G. The child protection worker carefully asked her questions. The child protection worker generally asked open-ended questions instead of leading questions. The child protection worker asked some of her questions multiple times in different ways, in an attempt to ensure that J.G. was being consistent and telling the truth. Exhibit 2 bears similar indicia of reliability.

After viewing the videotapes and observing the demeanor of J.G. and A.M., the court has no doubt that they told the child protection workers the truth and that Defendant sexually abused them. J.G. and A.M. gave highly detailed information about the sexual misconduct and sexual assaults that Defendant performed on them. It would be difficult for children of these tender years to make up such details and maintain consistency. Further, the trial evidence partially corroborates J.G.'s claims on Exhibit 1. *Cf. United States v. Alvarez,* 478 F.3d 864, 868–69 (8th Cir. 2007) (affirming admission of hearsay statements at sentencing, where hearsay was corroborated, specific and consistent). For example, at trial the evidence showed that Defendant took the sexually explicit photographs of J.G. with a Polaroid camera; on Exhibit 1, J.G. states that Defendant had taken naked pictures of her and

that the pictures had come "automatically out of the camera."

Accordingly, the court held that it could consider the videotaped statements of J.G. and A.M., without violating Defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

## VI. ADVISORY SENTENCING GUIDELINES ISSUES [7]

### A. Victims Under the Age of Twelve— USSG § 2G2.1(b)(1)(A)

In relevant part, USSG § 2G2.1(b)(1)(A) provides for a four-level increase to a defendant's base offense level "[i]f the offense involved a victim who had ... not attained the age of twelve years." USSG § 2G2.1(b)(1)(A). At the Hearing, Defendant maintained his innocence and objected to the four-level enhancement pursuant to USSG § 2G2.1(b)(1)(A), because the imposition of such enhancement implies that he committed an "offense" and had "victim[s]." Defendant conceded that J.G. and L.G. were under the age of twelve during the time period in which the government alleges the crimes in the Second Superseding Indictment occurred.

■ Based on the trial evidence, the court finds by a preponderance of the evidence that Defendant's offense involved a victim who had not attained the age of twelve years. J.G. and L.G. had not attained the age of twelve years when Defendant sexually exploited them. Indeed, Defendant's brother murdered J.G. before

7. The government bears the burden of proof on all advisory Sentencing Guidelines issues, except Defendant's request for a reduction for acceptance of responsibility, pursuant to USSG § 3E1.1. *Compare United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir.2004) (stating that the government bears the burden to prove sentencing enhancements), *with Peters v. United States,* 464 F.3d 811, 812 (8th Cir.2006) (stating that the defendant bears the burden to prove a reduction for acceptance of responsibility).

her twelfth birthday,[8] and L.G. has not yet reached the age of twelve.

Accordingly, the court held that a four-level enhancement, pursuant to USSG § 2G2.1(b)(1)(A), applied.

### B. Victims Under Defendant's Custody, Care or Supervisory Control—USSG § 2G2.1(b)(2)

In full, USSG § 2G2.1(b)(2) states:

> If the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels.

USSG § 2G2. 1(b)(2) (emphasis in original). Further, the Commentary to § 2G2.1 explains:

> Subsection (b)(2) is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this adjustment, the court should look to the actual relationship that existed between the defendant and the child and not simply to the legal status of the defendant-child relationship.

*Id.* § 2G2.1, cmt. (n. 3).

■ The evidence presented at trial and at the Hearing established by a preponderance of the evidence that J.G. and L.G. were in Defendant's "custody, care, or supervisory control." During the relevant time period, Defendant was their "baby-sitter" and "temporary caretaker." Defendant and his wife repeatedly called T.G.-B., the mother of J.G. and L.G., and asked her if J.G. and L.G. could come over and stay at Defendant's residence on the weekends. T.G.-B. agreed, and J.G. and L.G. stayed at Defendant's residence. Defendant often had sole custody, care and supervisory control over J.G. and L.G. on these weekends, because Defendant's wife had to work outside the residence. Once Defendant was left alone with J.G. and L.G., he took them to his bedroom and sexually exploited them.

Accordingly, the court held that a two-level enhancement, pursuant to USSG § 2G2. 1(b)(2), applied.

### C. Exploitation of More Than One Minor—USSG § 2G2.1(c)(1)

The government urged the court to apply the Special Instruction at USSG § 2G2.1(c)(1), because Defendant's "offense involved the exploitation of more than one minor." USSG § 2G2.1(c)(1). "For the purposes of this guideline, 'minor' means an individual who had not attained the age of 18 years." *Id.,* cmt. (n. 1).

■ The court found a by a preponderance of the evidence that Defendant's offense involved the exploitation of two minors: J.G. and L.G. As discussed in Part VI.A *supra,* J.G. and L.G. were both under the age of twelve at the time of the offenses. Therefore, J.G. and L.G. were minors for purposes of USSG § 2G2.1(c)(1).

Accordingly, the court held that the Special Instruction at USSG § 2G2.1(c)(1) applied.

---

**8.** *See State of Iowa v. Roger Bentley,* No. 06521 FECR071939 (Iowa Dist. filed Mar. 28, 2005) (reflecting that a state court jury found Roger Bentley guilty of Murder in the First Degree, in violation of Iowa Code section 707.2). The Iowa state court docket may be accessed at the following address: http://www.judicial.state.ia.us/. *See Stutzka v. McCarville,* 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

### D. Vulnerable Victim— USSG § 3A1.1(b)(1)

■ Section 3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim. . . ." USSG § 3A1.1(b)(1). A "vulnerable victim" is "a person (A) who is a victim of the offense of conviction . . . and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.*, cmt. (n. 2). "If age is already incorporated into the offense guideline, however, it cannot serve as a basis for the enhancement." *United States v. Myers*, 481 F.3d 1107, 1109 (8th Cir.2007) (citing USSG § 3A1.1, cmt. (n. 1)).

■ Based upon the testimony of T.G.-B. at the Hearing and the uncontested portions of the PSIR, the court found that Defendant knew or should have known that J.G. was a vulnerable victim for reasons other than her age.

J.G. had many psychological and physical problems that made her particularly susceptible to Defendant's criminal conduct. J.G. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD")[9] and Oppositional Defiant Disorder ("ODD").[10] J.G. had mood swings and heard non-existent voices. She had attempted suicide and had a history of suicidal ideation. She bit her wrists, pulled her hair out, banged her head against walls and tried to choke her grandmother. J.G. suffered from Spina Bifida,[11] Fetal Alcohol Syndrome and Asthma. J.G. was a special education student and was taking a large number of medications for these problems. J.G. was a vulnerable, emotionally disturbed individual, who was particularly susceptible to Defendant's intrigues, entreaties and abuse.

Defendant knew or should have known about J.G.'s psychological and physical problems. J.G.'s mother told Defendant about J.G.'s problems. Defendant personally observed some of the problems; indeed, Defendant personally administered some of J.G.'s medications. Defendant took advantage of J.G.'s vulnerability, in order to sexually exploit her for the purpose of producing, possessing and transporting child pornography.

Accordingly, the court held that a two-level enhancement, pursuant to USSG § 3A1.1(b)(1), was appropriate, because Defendant knew or should have known that J.G. was a vulnerable victim. *Compare Myers*, 481 F.3d 1107, 1109–11 (affirming district court's decision not to apply vulnerable victim enhancement, because there was no indication that the defendant knew or should have known victim had ADHD), *with United States v. White*, 979 F.2d 539, 544 (7th Cir.1992) (holding that victim's troubled childhood, history of sexual abuse and living situa-

---

9. ADHD is defined as a " 'persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequently displayed and more severe than is typically observed in individuals at a comparable level of development.' " *Timothy J. v.Super. Ct.*, 150 Cal.App.4th 847, 58 Cal.Rptr.3d 746, 750 n. 7 (2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed.2000), at 85).

10. ODD is defined as " 'a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior towards authority figures that persists for at least 6 months.' " *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 443 (7th Cir.2004) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders § 313.81 (4th ed.1994)).

11. "Spina bifida is a congenital defect of the vertebrae involving incomplete fusion of the parts of the vertebrae." *Davidson v. Slater*, 189 N.J. 166, 914 A.2d 282, 286 n. 3 (2007) (citing Stedman's Medical Dictionary 1805 (28th ed.2006)).

tion supported vulnerable victim enhancement) and *United States v. Bailey*, 405 F.3d 102, 113 (1st Cir.2005) (affirming vulnerable victim enhancement, where victim "was on suicide watch, was deemed a threat to himself or others, was stripped of his clothes, was cold, and was not allowed out of his cell even to get food").[12]

### E. *Acceptance of Responsibility— USSG § 3E1.1*

In pertinent part, USSG § 3E1. 1 provides that, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." USSG § 3E1.1(a) (emphasis in original). Further, the Commentary to § 3E1. 1 states:

In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that

the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

(b) voluntary termination or withdrawal from criminal conduct or associations;

(c) voluntary payment of restitution prior to adjudication of guilt;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense;

(g) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

*Id.*, cmt. (n. 1). "The adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.*, cmt. (n.2). "Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction." *Id.* "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.*

---

**12.** The government also argued that L.G. was a vulnerable victim, because she was an infant. *See, e.g., United States v. Wright*, 373 F.3d 935, 941–44 (9th Cir.2004) (holding that an infant was a vulnerable victim for purposes of § 3A1.1(b)(1), because "the traits and characteristics associated with infancy ... can exist independently of age" and "the factors of extreme youth and small physical size recognize a vulnerability beyond 'age' per se"). The court did not reach this issue, however, because it found that J.G. was a vulnerable victim.

■ Defendant has not shown that he is entitled to a decrease for acceptance of responsibility. Defendant put the government to its burden of proof at trial. He has not truthfully admitted the conduct comprising the offenses of conviction in any respect. He has shown absolutely no remorse whatsoever for his crimes; he is a completely unrepentant sexual predator. This is definitively not one of those "rare situation[s]" in which a defendant who puts the government to proof at trial still qualifies for acceptance. Defendant has not taken any actions whatsoever that evidence acceptance of responsibility. *See United States v. Speck,* 992 F.2d 860, 863 (8th Cir.1993) (affirming district court's decision to deny defendant acceptance of responsibility, where the defendant had "taken none of the actions listed in Application Note 1 as evidencing acceptance of responsibility").

Accordingly, the court held that a two-level decrease for acceptance of responsibility did not apply. USSG § 3E1.1.

### F. Repeat and Dangerous Sex Offender—USSG § 4B1.5

The government argued that the court should apply a five-level enhancement, pursuant to USSG § 4B1.5(b)(1), because Defendant is a repeat and dangerous sex offender. With some exceptions not relevant here, § 4B1.5(b)(1) provides:

(b) In any case in which ... the defendant engaged in a

(1) pattern of activity involving prohibited sexual conduct: (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three.

USSG § 4B1.5 (emphasis in original).

■ Defendant argues that he did not "engage[ ] in a pattern of activity involving prohibited sexual conduct." The advisory Sentencing Guidelines provide the following instructions and definitions for "pattern of activity" and "prohibited sexual conduct":

(A) *Definition....* "[P]rohibited sexual conduct" means ...:(i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does not include receipt or possession of child pornography. "Child pornography" has the meaning given that term in 18 U.S.C. § 2256(8).

(B) *Determination of Pattern of Activity.—*

(i) *In General.—*[T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.

(ii) *Occasion of Prohibited Sexual Conduct.—*An occasion of prohibited sexual conduct may be considered ... without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG § 4B1.5, cmt. (n. 4) (emphasis in original).

Under the foregoing standards and definitions, a five-level enhancement is clearly appropriate. The trial evidence, as well as Exhibit 1, prove by a preponderance of the evidence that Defendant sexually abused J.G. and produced child pornography of J.G. and L.G. Producing child pornography and sexual abusing a child is "prohibited sexual conduct." *Id.,* cmt. (n. 4(A)(ii)).

These acts are part of a pattern of activity, insofar as Defendant produced child pornography of J.G. and L.G. and sexually abused J.G. on at least two different occasions. *Id.,* cmt. (n. 4(B)).[13]

Accordingly, the court held that a five-level enhancement is applicable, pursuant to USSG § 4B1.5(b)(1), because Defendant is a repeat and dangerous sex offender.[14]

### G. Substantially Under–Represented Criminal History—USSG § 4A1.3

██ After all applicable adjustments and grouping, Defendant's adjusted offense level was **42.** Because Defendant was a Criminal History Category IV, his advisory Sentencing Guidelines range was **360 months of imprisonment to life imprisonment.** *See* USSG Sentencing Table. At the Hearing, however, the government asked the court to depart upward one level for substantially under-represented criminal history, pursuant to USSG § 4A 1.3. Because an adjusted offense level of **43** would result in the same advisory Sentencing Guidelines range, *see id.,* the court denied as moot the government's motion for upward departure.[15]

### VII. CONCLUSION

At the Hearing, the court sentenced Defendant in a manner consistent with this Sentencing Memorandum.

**IT IS SO ORDERED.**

**13.** The government only argued that the five-level enhancement was appropriate with respect to Defendant's conduct towards J.G. and L.G. Therefore, the court did not analyze this enhancement with respect to any other victims.

**14.** In his sentencing memorandum, Defendant argued that application of both USSG § 2G2.1 and USSG § 4B1.5 would result in impermissible double counting. However,

Defendant abandoned this argument at the Hearing. In any event, there is no double counting here. *See, e.g., United States v. Schmeilski,* 408 F.3d 917, 919–20 (7th Cir. 2005) (upholding joint application of USSG § 2G2.1 and USSG § 4B1.5(b)).

**15.** The court reserved the right to depart upward, if at some later date it were determined that the court miscalculated Defendant's advisory Sentencing Guidelines range.