[No. B220546. Second Dist., Div. Seven. Apr. 18, 2011.]

In re CHRISTOPHER F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER F., Defendant and Appellant.

COUNSEL

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth C. Byrne and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PERLUSS, P. J.**—Christopher F. was declared a ward of the juvenile court and ordered home on probation after the court found him mentally competent

and sustained a petition alleging he had made criminal threats against his high school dean. On appeal Christopher contends the court committed prejudicial error by failing to appoint the director of the regional center for the developmentally disabled (regional center director), as required by Penal Code section 1369, subdivision (a).[1] He also contends the court focused on the wrong factors in determining his mental competence and, as a result, its finding is not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Petition*

A petition was filed pursuant to Welfare and Institutions Code section 602 on July 14, 2008 alleging Christopher had threatened his high school dean, Michael Jones, in violation of section 422. According to the petition, on May 13, 2008 Christopher was escorted by his one-on-one teaching assistant to Jones's office because his cell phone rang in class. While at the office, Christopher said aloud he was "gonna kill that motherfucker." He wrote "Compton 70's, BBK, LCC, Fuck Jones, Jones will die" and "Fuck Jones, He will die" on his hands. He also wrote a threatening letter that said, "Fuck you, Jones. You will fucking die and go to Hell, Compton 70's, LCC, LCC, thug life for life homeys. Fuck Jones, Jones will die." The letter was given to Jones. Christopher had apparently threatened Jones before; but Jones had not taken those earlier threats seriously. This time, Jones called the police; and Christopher was detained.

### 2. *Christopher's Evaluation and the Competency Hearing*

Prior to trial Christopher's counsel declared a doubt as to his competence.[2] The juvenile court ordered the proceedings suspended and scheduled a competency hearing. On March 2, 2009 the court appointed a mental health expert from the USC Institute of Psychiatry and Law to evaluate Christopher. The court did not appoint the regional center director.

The competency hearing was held on May 21, 2009 and June 2, 2009. The defense expert, Dr. Robert Rome, a licensed psychologist who had formerly worked as a psychologist for the North Los Angeles County Regional Center, testified he had evaluated Christopher on December 14, 2008. Dr. Rome

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] The record does not indicate the bases for counsel's doubt and, specifically, whether there was any suggestion Christopher was developmentally disabled. However, it appears Christopher was referred to the defense expert, Dr. Robert Rome, several months before his counsel declared a doubt as to his competency.

prepared a written report, also dated December 14, 2008, which was provided to the court and used by counsel to question Dr. Rome during his testimony.

According to Dr. Rome's report, Christopher was cooperative during the evaluation and fully participated in providing his background history. Christopher's "[i]ntellectual functioning generally appears at the borderline range relative to peers . . . . In the non-verbal visual perceptual reasoning area, Christopher shows functioning at the low end of the average range. By contrast, in the verbal comprehension areas, Christopher displays functioning at the low end of the borderline range. . . . [¶] . . . [¶] Language development appears significantly below average at the mildly deficient range relative to peers . . . . He shows difficulties in both receptive and expressive language areas." Based on the testing he had conducted, Dr. Rome believed Christopher's academic function was "significantly below age/grade level expectations at the high end of the third grade level for sight word recognition and reading comprehension areas . . . ." Nonetheless, his "[a]daptive functioning appears generally at the borderline range relative to peers . . . . Daily living skills are low average, while socialization areas are at the high end of the borderline range, and communication skills appear mildly deficient. . . . [H]e is looking forward to a job that will shortly begin at a body parts shop where he will work as a mechanic. He takes pride in his ability to work with cars."

In the summary section of his report Dr. Rome opined, "Christopher's language, learning, and other needs appear to impact issues relating to competency in court. . . . His language functioning at the retarded level interferes with his ability to follow what is going on in court and in regard to his case. These language limitations would severely restrict his ability to assist his attorney in his defense. In the view of this psychologist, Christopher is not competent to proceed in the legal matters against him at this time."

Repeating in court his conclusion that Christopher was not mentally competent to participate in the juvenile proceedings, Dr. Rome testified, "it would be very, very difficult for Christopher to appropriately assist his attorney in the case because of longstanding, in fact, lifelong, language difficulties." Dr. Rome explained Christopher suffers from "mixed receptive, expressive language disorder," which affects his ability "to understand [and] comprehend what he is hearing" and "to properly seek and respond to the situation, to questions and to what is being said to him." However, Dr. Rome also testified the deficiencies he identified are not "something considered to be developmental" or "mental retardation" because Christopher is above average in nonverbal areas although his performance in verbal areas is significantly below average and roughly corresponds to the level of an eight year old. Moreover, during his second day of testimony, Dr. Rome reported he had spoken to Christopher in the hallway earlier in the day and "he's very,

very excited, that he's doing well [since changing schools]. He's getting better grades. He's—as I said, he's fully attending and participating within school."

### 3. *Competency Findings, Adjudication and Disposition*

On July 13, 2009 the court found Christopher competent. The court concluded Dr. Rome's evaluation was incomplete and rejected his opinion Christopher was not competent in substantial part because he had failed to take into account Christopher's passing grades in school.[3] Summarizing its ruling the court stated, "I am not convinced by anything that I've seen in court that the minor is not able to assist [his counsel]. I also believe that the minor understands [the] proceedings, what the charge is against him and would be able to assist counsel in his defense." The court scheduled a jurisdiction hearing for October 26, 2009.

At the jurisdiction hearing the court sustained the allegations in the Welfare and Institutions Code section 602 petition, finding Christopher had made a criminal threat in violation of section 422. Christopher was declared a ward of the court and ordered home on probation.

## CONTENTION

Christopher contends the juvenile court committed prejudicial error by failing to appoint the regional center director pursuant to section 1369, subdivision (a), to assist in determining his mental competence and the evidence is insufficient to support the court's finding he was competent to participate in the proceedings. He does not contest the sufficiency of the evidence establishing he made a criminal threat.[4]

---

[3] The court relied on the probation report, which listed Christopher's grades (a "B" in geometry, a "B" in world history and a "D" in English) and 10th grade reading level. Christopher's attorney argued (without presenting supporting evidence) these grades were from compensatory education classes and were not indicative of Christopher's ability to understand proceedings or assist in his own defense.

[4] Christopher did not argue in his appellate briefs that failure to appoint the regional center director violated his due process rights. Ordinarily, we do not address issues not raised by the parties. (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847, fn. 11 [101 Cal.Rptr.3d 854]; see *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].) However, because this constitutional issue might be raised by Christopher in a petition for a writ of habeas corpus, we invited counsel to submit supplemental letter briefs

## DISCUSSION

### 1. *Governing Law*

■ The criminal trial of an incompetent defendant violates the due process clause of the federal and state Constitutions. (*Medina v. California* (1992) 505 U.S. 437, 453 [120 L.Ed.2d 353, 368, 112 S.Ct. 2572]; see *Drope v. Missouri* (1975) 420 U.S. 162, 181 [43 L.Ed.2d 103, 95 S.Ct. 896]; *People v. Jenkins* (2000) 22 Cal.4th 900, 1002 [95 Cal.Rptr.2d 377, 997 P.2d 1044]; see also § 1367, subd. (a) ["[a] person cannot be tried or adjudged to punishment while that person is mentally incompetent"].) Similarly, a child subject to delinquency proceedings has a due process right to a competency hearing. (*In re Ricky S.* (2008) 166 Cal.App.4th 232, 234 [82 Cal.Rptr.3d 432] (*Ricky S.*); *Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 857 [58 Cal.Rptr.3d 746]; see Cal. Rules of Court, rule 5.645(d) (rule 5.645(d)) ['[i]f the court finds that there is reason to doubt that a child who is the subject of a petition filed under [Welfare and Institutions Code] section 601 or 602 is capable of understanding the proceedings or of cooperating with the child's attorney, the court must stay the proceedings and conduct a hearing regarding the child's competence"].) Whether an adult or a child, the question at the competency hearing is the same: Does the individual have sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational, as well as a factual, understanding of the proceedings? (*Dusky v. United States* (1960) 362 U.S. 402, 402–403 [4 L.Ed.2d 824, 80 S.Ct. 788]; *People v. Ary* (2011) 51 Cal.4th 510, 517 [120 Cal.Rptr.3d 431, 246 P.3d 322]; *Ricky S.*, at p. 234.)

### 2. *Failure to Appoint the Regional Center Director to Evaluate Christopher Was Not Reversible Error*

#### a. *Section 1369 does not apply to juvenile proceedings*

Christopher argues the court erred when it failed to appoint the regional center director to assist in the evaluation of his mental competence, relying on section 1369, subdivision (a), which provides, "If it is suspected the defendant is developmentally disabled, the court shall appoint the director of the regional center for the developmentally disabled . . . or the designee of the director, to examine the defendant." Like Christopher, the People assumed

---

addressing whether the appointment of the regional center director was necessary to protect his right to due process in the circumstances of this case. (See *People v. Norwood* (1972) 26 Cal.App.3d 148, 152–153 [103 Cal.Rptr. 7] ["An appellate court may note errors not raised by the parties if justice requires it. [Citations.] . . . A matter normally not reviewable upon direct appeal, but which is shown by the appeal record to be vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered on direct appeal."].)

section 1369 applies to juvenile proceedings, but disputed Christopher's contention the statutory requirements were triggered in this case in light of Dr. Rome's testimony that, in his opinion, Christopher was not developmentally disabled. In any event, the People argue, given Dr. Rome's experience working with developmentally disabled individuals, the failure to appoint the regional center director did not prejudice Christopher. (See *People v. Leonard* (2007) 40 Cal.4th 1370, 1390–1391 [58 Cal.Rptr.3d 368, 157 P.3d 973] [failure to appoint regional center director was harmless error because assessment of defendant by three psychologists familiar with developmental disabilities satisfied statutory purpose to ensure a developmentally disabled defendant's competence to stand trial is assessed by those having appropriate experience].)

■ As we indicated in our letter to counsel requesting supplemental briefing, sections 1367 through 1376, and specifically section 1369, which contain detailed procedures for conducting competency hearings and the measures to be implemented upon a finding of mental incompetence, on their face apply only to adult criminal proceedings. There are no similar, specific statutory provisions for competency hearings in juvenile court. (See *James H. v. Superior Court* (1978) 77 Cal.App.3d 169, 175–176 [143 Cal.Rptr. 398] [in the absence of statutory provisions for determining mental competence in juvenile proceedings, juvenile court has inherent power to borrow procedures contained in Pen. Code for adult proceedings]; see also Burrell et al., *Incompetent Youth in California Juvenile Justice* (2008) 19 Stan. L. & Pol'y Rev. 198, 208–217.) Rather, juvenile proceedings, which are governed by the provisions of the Welfare and Institutions Code, not the Penal Code, look to general principles of due process and the requirements of rule 5.645(d) for competency determinations.[5]

■ Although section 1369, subdivision (a), requires appointment of the regional center director upon a reasonable suspicion a defendant suffers from a developmental disability, as Christopher argues, California Rules of Court, rule 5.645(d) does not. Instead, rule 5.645(d) provides only that the juvenile court "may appoint an expert to examine the child to evaluate the child's capacity to understand the proceedings and to cooperate with the attorney" if it finds there is reason to doubt a child who is the subject of a petition filed under Welfare and Institutions Code section 601 or 602 is capable of understanding the proceedings or of cooperating with the child's attorney. (Rule 5.645(d)(1); see *Timothy J. v. Superior Court, supra*, 150 Cal.App.4th at p. 851.) Thus, the juvenile court must stay proceedings and conduct a hearing if there is doubt

---

[5] California Rules of Court, former rule 1498 (now rule 5.645) was adopted by the Judicial Council after the decision in *James H. v. Superior Court, supra*, 77 Cal.App.3d 169 to prescribe the procedures to be followed by the juvenile court in determining a child's mental competence. (*Timothy J. v. Superior Court, supra*, 150 Cal.App.4th at p. 858.)

as to the child's competence, and examination by an appropriate expert will be required to assist the court in making the competency determination. (See *Tyrone B. v. Superior Court* (2008) 164 Cal.App.4th 227, 231 [78 Cal.Rptr.3d 569] [juvenile court must appoint appropriate expert if child's counsel has expressed a doubt as to his or her client's mental competence].) But appointment of the regional center director or his or her designee, while certainly permissible in the discretion of the juvenile court, is simply not required by statute or rule of court. (Cf. *James H. v. Superior Court, supra*, 77 Cal.App.3d at pp. 175–176.)

> b. *Appointment of the regional center director was not required to protect Christopher's due process rights*

In our request for supplemental briefing we asked counsel to address whether appointment of the regional center director, even if not mandated by statute or rule of court, is required by general due process principles if it is suspected a child subject to juvenile proceedings is developmentally disabled. Accepting that invitation, Christopher now argues appointment of the regional center director is necessary to protect the due process rights of a juvenile who may be developmentally disabled and, as a consequence, incompetent to participate in pending proceedings.

■ The Court of Appeal in *Tyrone B. v. Superior Court, supra*, 164 Cal.App.4th 227 held, although rule 5.645(d) provides that the juvenile court "may," not "shall," appoint an expert to evaluate the child when the child's counsel has expressed a doubt as to the client's mental competence, "it would be an abuse of discretion for the court to refuse to appoint an expert." (*Tyrone B.*, at p. 231.) We agree. Similarly, to ensure a developmentally disabled child's competence to participate in juvenile proceedings is properly assessed, the court should appoint an expert familiar with developmental disabilities. (See *People v. Leonard, supra*, 40 Cal.4th at p. 1390 [discussing policy underlying § 1369, subd. (a)].) But the regional center director (or his or her designee) is not the only mental health professional with the necessary qualifications and experience to evaluate children who may be developmentally disabled.

■ Here, Dr. Rome was skilled in the diagnosis of developmental disabilities. He was formerly employed as a psychologist at the regional center and had testified in prior cases as an expert on developmental disabilities. Moreover, Dr. Rome's evaluation included an assessment of Christopher's potential developmental disabilities; indeed, he specifically opined Christopher's learning disabilities were not "something considered to be developmental" or "mental retardation" because Christopher was

above average in nonverbal areas. Nothing further was required to protect Christopher's due process rights. (See *People v. Leonard, supra,* 40 Cal.4th at p. 1390.)

### 3. *Substantial Evidence Supports the Finding of Competence*[6]

Christopher contends that by basing its determination of his mental competence on his grades[7] rather than his present ability to participate in the proceedings, the court focused on the wrong factors and, as a result, its finding is not supported by substantial evidence. That is, Christopher argues his grades did not evince his "present" ability to assist counsel. (See *Ricky S., supra,* 166 Cal.App.4th at p. 236.)

In response, citing *People v. Ramos* (2004) 34 Cal.4th 494, 507 [21 Cal.Rptr.3d 575, 101 P.3d 478] and section 1369, subdivision (f), the People argue Christopher is presumed competent "unless it is proved otherwise by a preponderance of the evidence." If the People are correct, then Christopher failed to meet his burden of proof on the issue. Under well-established law the juvenile court was entitled to reject Dr. Rome's ultimate opinion Christopher was mentally incompetent because he had apparently failed to consider Christopher's academic performance and 10th grade reading level. (See *People v. Marshall* (1997) 15 Cal.4th 1, 31–32 [61 Cal.Rptr.2d 84, 931 P.2d 262] [jury not required to accept unanimous opinion of experts as to

---

[6] The same standard governs our review of the sufficiency of evidence in juvenile cases as in adult criminal cases: "[W]e review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [75 Cal.Rptr.3d 289, 181 P.3d 105], italics omitted; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540 [81 Cal.Rptr.3d 119].)

[7] Christopher's grades and reading level were included in his probation report although, as discussed, Dr. Rome also testified he had spoken to Christopher the day of his testimony and Christopher had confirmed his grades had improved since changing schools. Christopher has not argued, either in the juvenile court or on appeal, the information in the probation report was inadmissible or the juvenile court erred in considering it. Accordingly, we do not address that question. (See *Kim v. Sumitomo Bank, supra,* 17 Cal.App.4th at p. 979; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

defendant's competence to stand trial; "value of an expert's opinion depends upon the quality of the material on which the opinion is based and the reasoning used to arrive at the conclusion"]; see also *People v. Drew* (1978) 22 Cal.3d 333, 350 [149 Cal.Rptr. 275, 583 P.2d 1318] [trier of fact not automatically required to accept unanimous view of experts who testified as to defendant's sanity]; see generally § 1127b ["jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled"].) No other evidence supports a finding of mental incompetence.

Christopher expressly disclaims any challenge to the applicability of the presumption of competence in juvenile proceedings. Yet the statutory presumption of competence set forth in section 1369, subdivision (f), reflects a legislative judgment that does not necessarily transfer to juvenile proceedings, which, despite the increasing convergence of the adult and juvenile justice systems, remain markedly different from adult proceedings because of their general goal of treatment of the juvenile offender, rather than punishment of the adult criminal. (See *People v. Smith* (2003) 110 Cal.App.4th 1072, 1080 [1 Cal.Rptr.3d 901]; see also *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 593 [117 Cal.Rptr.2d 168, 41 P.3d 3] (dis. opn. of Kennard, J.).) No statute or rule of court specifically applicable to juvenile proceedings allocates the burden of proof on this issue. Absent such guidance, it is not immediately obvious the burden of proving a child's competence, as well as the elements of the offense charged, should not rest with the People, rather than requiring the child, like an adult defendant, to prove incompetence. (See *Medina v. California, supra,* 505 U.S. at p. 446 ["The rule that a criminal defendant who is incompetent should not be required to stand trial has deep roots in our common-law heritage. . . . [¶] By contrast, there is no settled tradition on the proper allocation of the burden of proof in a proceeding to determine competence."]; *People v. Ary, supra,* 51 Cal.4th at pp. 518, 520 [placing the burden of proof on the defendant in mental competence proceedings, whenever conducted during a criminal case, does not violate due process principles]; see generally Evid. Code, § 500 ["[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].)

However, we need not resolve this issue in the case at bar. Even if there is no presumption of competence and the People properly bore the burden of proving Christopher had the present ability to assist his lawyer and a reasonable understanding of the proceedings, substantial evidence supports the juvenile court's finding. It is true, as Christopher argues, that grades alone, at least without reference to the nature of the classes in which they were earned, may not be indicative of a child's present ability to assist counsel in a delinquency proceeding. But here the court plainly stated it was

using Christopher's grades, which Dr. Rome had failed to discuss, only as an indicator of Christopher's competence, not as the sole or exclusive basis for its finding. The court also considered a variety of other factors, including Dr. Rome's testimony that Christopher's learning disability was not developmental and that Christopher was not mentally retarded.

In sum, evidence that Christopher was not mentally retarded, read at a 10th grade level and maintained passing grades in core subjects was sufficient to support the court's determination that Christopher was mentally competent.

## DISPOSITION

The juvenile court's order is affirmed.

Woods, J., and Jackson, J., concurred.

A petition for a rehearing was denied May 3, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 10, 2011, S193104.