Filed 6/19/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | G046961 |
| Plaintiff and Respondent, | (Super. Ct. No. DL034139) |
| v. | O P I N I O N |
| R.V., | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge. Judgment affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A Welfare and Institutions Code section 602[1] petition alleged that minor R.V. brandished a weapon and vandalized property. Minor's counsel questioned minor's competence to stand trial. The court suspended the proceedings, appointed an evaluator, held a competency hearing, and found minor failed to meet his burden to prove his incompetence. The court then reinstated the proceedings, found true the petition's allegations, and granted probation to minor. On appeal minor contends the court erred by requiring him to prove his incompetence and, alternatively, that no substantial evidence supports the court's finding he failed to meet his burden of proof on the issue. For the reasons discussed herein, we affirm the judgment.

FACTS

On the morning of March 9, 2012, minor woke up angry and told his stepfather he was sick and did not want to go to school. Minor threw containers and clothing around the bedroom. The stepfather told minor he would miss the bus. Minor clenched his fists and said, "I'm going to fuck you up." Minor pulled out a small silver knife from his pocket and told the stepfather, "I will kill you if you call the police."

The owner of the house came in and saw minor kick a DVD player and argue with his stepfather in the living room. The owner told minor to calm down. Minor said, "I'll kill you too." Minor went in his bedroom and stabbed the bed at least three times with the knife.

Minor's mother saw him throw a small television onto the living room floor. The mother followed him into the bedroom. Minor yelled, "I want a house, I want

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

my own space." He had a small silver knife and told his mother, "Don't come close to me. I have a knife."

The stepfather told police that minor has mental problems and is getting worse, and that the stepfather feared for his own and his daughter's safety. The mother said minor has psychological problems and had not taken his prescribed medication for the past four weeks.

A section 602 petition alleged minor committed two counts of misdemeanor brandishing a deadly weapon (Pen. Code, § 417, subd. (a)(1)) and misdemeanor vandalism causing property damage of under $400 (Pen. Code, § 594, subds. (a) & (b)(2)(A)).

Pursuant to section 709, minor's counsel declared a doubt, based on minor's cognitive deficits, as to his competency to stand trial and to assist in his defense. The court suspended proceedings, set a competency determination hearing, and appointed Dr. Haig Kojian to perform a section 709 evaluation.

In Dr. Kojian's confidential report assessing minor's competence, the psychologist observed that minor appeared to be impaired, with limited thinking, slow speech, and an altered thought process. But because minor refused to take any tests, Dr. Kojian was unable "to assess him with objective measures used to determine IQ, academic functioning, personality, organic functioning, etc." Dr. Kojian stated minor presented as being depressed. Minor had apparently been treated for mood instability (such as with the medications, Celexa and Abilify), and "for unknown reasons his cognition and thinking are, clearly, disrupted." Dr. Kojian opined minor was incompetent to stand trial, was legitimately confused about what was occurring, and lacked the capacity to meaningfully or rationally cooperate with counsel in the preparation of a defense, or to assist counsel in a meaningful or rational manner.

At the competency hearing, Dr. Kojian testified as follows. There are many tests available to assess a person's cognitive functioning. But even if Dr. Kojian had

3

been able to administer tests to minor, this would not have changed the psychologist's opinion that minor was incompetent under the legal standard. Minor's thinking seemed impaired and his affect was inappropriate. Minor did not appear to be malingering. Minor's mother and stepfather, his teachers, and a police officer all thought minor was confused or impaired. On cross-examination, Dr. Kojian testified minor "was very slow and deliberate in his speech and movements. He was stiff legged, his gait was inhibited." "It seemed like he might have been responding to internal stimuli, meaning voices," although minor denied it.

The court reviewed Dr. Kojian's records, as well as the modification petition and minor's detention records.[2] The court stated minor bore the burden to prove by a preponderance of the evidence his incompetency to stand trial (citing Pen. Code, § 1369, subd. (f)) and that the court was not obligated to adopt Dr. Kojian's opinion that minor was incompetent. The court found minor had not sustained his burden to prove incompetence and found him to be competent to stand trial. The court did not accept the social worker's opinion that minor was developmentally delayed, because the opinion was "a piggyback of the manifestation determination," which was not a full determination necessary for an Individualized Education Program. Nor did the court accept Dr. Kojian's opinion, partly because the doctor was unable to fully assess through testing whether minor was malingering. The court also found that certain statements made by minor, which Dr. Kojian had interpreted as confusion, were in fact appropriate, such as his statements that his wrongdoing involved messing up his house and refusing to go to school, that he understood a misdemeanor is less serious than a felony, and that his drug possession case at school had been taken care of. The court also noted, based on the manifestation report, that the school believed minor's cognitive and adaptive delays may have been drug induced, given that his 2009 testing did not show any cognitive or

_____

2 The appellate record does not contain certain documents to which the court referred, such as the modification petition and the manifestation determination and report.

4

adaptive delays. The court concluded it did not accept Dr. Kojian's opinion. Consequently, the court reinstated the proceedings.

Minor's counsel respectfully disagreed with the court's ruling, but submitted the matter for decision based upon the police report.

The court found true the petition's allegations, declared minor a ward of the court under section 602, and placed him on supervised probation. The court provided the family a referral for wrap around services.

DISCUSSION

Minor contends the court erred by ruling he bore the burden to prove incompetency. Alternatively, he contends no substantial evidence supports the court's finding he failed to meet this burden.

*Basic Principles on Competency to Stand Trial*

Under the due process clauses of the federal and state Constitutions, a mentally incompetent person (whether an adult or a minor) may not be subjected to a criminal trial or juvenile delinquency proceeding. (*In re Christopher F.* (2011) 194 Cal.App.4th 462, 468 (*Christopher F.*).) As to criminal defendants, Penal Code section 1367, subdivision (a), defines incompetence as the defendant's inability (resulting from a mental disorder or developmental disability) to understand the nature of the criminal proceedings or to assist defense counsel in a rational manner. As to minors, section 709, subdivision (a), defines incompetence as the minor's lack (1) of a "sufficient present ability to consult with counsel and assist in preparing [a] defense with a reasonable degree of rational understanding," or (2) of a "rational as well as factual understanding . . . of the nature of the charges or proceedings." (*Ibid*.) Juvenile incompetency is not defined solely "in terms of mental illness or disability," but also

5

encompasses developmental immaturity, since minors' brains are still developing. (*Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 860.)  Both the adult and juvenile definitions of incompetence accord with the one established by the United States Supreme Court in *Dusky v United States* (1960) 362 U.S. 402.  The *Dusky* test asks whether defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him."  (*Ibid*.)

Section 709 governs the procedure for determining the competency of a minor who is subject to a section 601 or 602 petition.  (§ 709, subds. (a), (e).)  If the minor's counsel or the court expresses a doubt as to the minor's competency *and* if the court finds substantial evidence raises such a doubt, the court must suspend the proceedings (*id*., subd. (a)),[3] order that a competency hearing be held, and "appoint an expert to evaluate whether the minor suffers from a mental disorder, developmental disability, developmental immaturity, or other condition and, if so, whether the condition or conditions impair the minor's competency" (*id.*, subd. (b)).  If the court finds the minor "to be incompetent by a preponderance of the evidence, all proceedings shall remain suspended for a period of time that is no longer than reasonably necessary to determine whether there is a substantial probability that the minor will attain competency in the foreseeable future, or the court no longer retains jurisdiction."  (§ 709, subd. (c).)

*Minor Was Presumed to Be Competent and Bore the Burden of Proving Incompetency*

As to adult defendants, the presumption of competency is well established. (*People v. Ramos* (2004) 34 Cal.4th 494, 507.)  Penal Code section 1369, subdivision (f) establishes a presumption "that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent."  With this

---

[3] "Evidence is substantial if it raises a reasonable doubt about the child's competence to stand trial."  (Cal. Rules of Court, rule 5.645(d)(1).)

6

phrase, the statute establishes a burden of proof allocation consistent with its presumption of competence, "placing on the defendant the burden of proving his own incompetence." (*People v. Medina* (1990) 51 Cal.3d 870, 882 (*Medina I*), affd. *sub nom. Medina v. California* (1992) 505 U.S. 437 (*Medina II*).)[4]

In *Medina I*, the defendant raised "a due process challenge to the statutory burden allocation." (*Medina I*, *supra*, 51 Cal.3d at p. 881.) Our Supreme Court upheld the constitutionality of Penal Code section 1369, subdivision (f)'s presumption of competence and allocation of the burden of proof to the defense. (*Medina I*, at pp. 884-885.) *Medina I* reasoned: "In determining the propriety of a particular proof allocation, a critical factor is the extent to which either party has access to the relevant information." (*Id.* at p. 885.) "[O]ne might reasonably expect that the defendant and his counsel would have better access than the People to the facts relevant to the court's competency inquiry." (*Ibid.*) Defense counsel "can readily attest to any . . . defect or disability. The People, on the other hand, have little or no access to information regarding the defendant's relationship with his counsel, or the defendant's actual comprehension of the nature of the criminal proceedings." (*Ibid.*; see also *Medina II*, *supra*, 505 U.S. at p. 450 ["defense counsel will often have the best-informed view of the defendant's ability to participate in his defense"].)

*Medina I*, *supra*, 51 Cal.3d 870, was subsequently upheld by the United States Supreme Court in *Medina II*, *supra*, 505 U.S. at page 453. (*People v. Ary* (2011) 51 Cal.4th 510, 518.) The Supreme Court's rejection of the petitioner's due process challenge to Penal Code section 1369, subdivision (f), was based on the high court's determination that the California procedure is "'constitutionally adequate'" to guard against an incompetent defendant being criminally tried. (*Medina II*, at p. 452.) So long

---

[4]       In the rare case where the People claim (against opposition) that the defendant is incompetent, the People bear the burden of proof under Penal Code section 1369, subdivision (f). (*Medina I*, *supra*, 51 Cal.3d at p. 885.)

as "the State affords the criminal defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial," allocating to him the burden of proof does not violate the federal due process clause. (*Id*. at p. 451.)

Thus, an adult criminal defendant clearly bears the burden to prove incompetence. In contrast, as to a *minor's* competence (or lack thereof), section 709 establishes no presumption or burden of proof allocation, nor has any published case decided the issue. (*In re Alejandro G.* (2012) 205 Cal.App.4th 472 (*Alejandro G.*); *id*. at p. 482 ["this question has not been decided by any California court"]; see also Seiser & Kumli, Cal. Juvenile Courts and Procedure (2013) § 3.73[5][b], p. 3-135.)

In *Christopher F.*, *supra*, 194 Cal.App.4th 462, the Court of Appeal was not called upon to resolve the burden of proof issue. (*Id*. at p. 472.) Nonetheless, *Christopher F.* raised (but did not answer) the question of whether the burden to prove a minor's competency should rest with the People. *Christopher F.* noted that Penal Code section 1369, subdivision (f)'s statutory presumption "reflects a legislative judgment that does not necessarily transfer to juvenile proceedings, which, despite the increasing convergence of the adult and juvenile justice systems, remain markedly different from adult proceedings because of their general goal of treatment of the juvenile offender, rather than punishment of the adult criminal. [Citations.] No statute or rule of court specifically applicable to juvenile proceedings allocates the burden of proof on this issue. Absent such guidance, it is not immediately obvious the burden of proving a child's competence, as well as the elements of the offense charged, should not rest with the People, rather than requiring the child, like an adult defendant, to prove incompetence." (*Christopher F.*, at p. 472.)

Based on *Christopher F.*, minor argues, "Given that the focus of juvenile proceedings is for treatment, it would be better to err on the side of incompetency and

maximize treatment potential for juveniles exhibiting impairment in mental functioning and place the burden on the prosecution to prove competency."

The foregoing statement is the full extent of minor's argument; he does not further explicate it and, in particular, fails to clarify his precise meaning for the broad term, "treatment." We infer that the premise of his argument is that a minor who is ruled incompetent will receive better mental health diagnosis and treatment than will a minor who is ruled competent to stand trial. Minor provides no support for this premise, nor is it a self-evident proposition.

We put minor's argument into perspective. The goal of the juvenile justice system is rehabilitation. (*People v. Renteria* (1943) 60 Cal.App.2d 463, 470 [goal is "that the child should not become a criminal in later years, but a useful member of society"]; *In re Myresheia W.* (1998) 61 Cal.App.4th 734, 740-741; *In re Nan P.* (1991) 230 Cal.App.3d 751, 757-758; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329; Seiser & Kumli, Cal. Juvenile Courts and Procedure, *supra*, § 3.11, p. 3-18.) Rehabilitation is an *end* goal, which is to be achieved through the *means* of medical treatment and other reformative (sometimes punitive) tools. (§ 202, subd. (b) [juvenile delinquents receive care, treatment, and guidance that can include punishment consistent with rehabilitative objectives].) While adult criminal courts focus on punishment, the juvenile justice system seeks to rehabilitate a wayward minor. (*In re Myresheia W.*, at pp. 740-741.) Toward that end, the juvenile justice system has available a host of services and reformative tools. This panoply includes mental health and medical diagnosis and treatment, substance abuse education and testing, counseling, court orders to perform community service or to pay fines and restitution, placement in the family home or other appropriate setting or commitment to juvenile hall or the Juvenile Justice, Department of Corrections and Rehabilitation, and education and other services for the minor's parent or guardian. (See, e.g., §§ 635.1, 704, 713 [in certain counties], 726, subd. (a), 727, 727.2, 727.7, 729.3, 729.8, 729.9, 729.10, 730, subd. (a), 730.5, 730.6, 731, 6550.) All of these

statutes (which provide for appropriate treatment and rehabilitative services, programs, and punishment) expressly require that the minor *first* be found to be a person described in (or declared a ward under) section 602, or, sometimes, section 601.[5]

Although minor contends the goals of the juvenile justice system suggest that a juvenile court should err on the side of incompetence, minor's argument can be turned on its head. Given the wide range of services and corrective tools available to a court fashioning a disposition order for a declared ward, minor's suggestion that the system should "err on the side of incompetency" is not necessarily in the best interests of minors or of the state. To "err on the side of incompetency" as to a competent minor deprives him or her of the full panoply of reformative options available under the juvenile justice system and thereby diminishes the chances for true rehabilitation.

Indeed, one might argue that minor's argument makes more sense with respect to the adult criminal system than it does as to the juvenile justice system. Given the harsher goal of punishment for adults, it is arguably more important to err on the side of incompetency for adult defendants (who, if convicted, are theoretically more likely to be punished than treated) than it is for minors subject to sections 601 or 602 petitions. Nonetheless, it is well-established that adult criminal defendants claiming incompetency bear the burden of proof on the issue; the ultimate goal of the adult criminal system simply has no bearing on the issue.

We see no reason to treat minors differently from adults for purposes of allocating the burden of proof on incompetency. Incompetent adults and minors have the

---

[5] In certain counties, the court may refer a minor *alleged* to be described in section 602 for a mental health evaluation under sections 711 and 712. (See § 710, subd. (a).) In the case of a referral under section 711, and a determination by the court under section 712 that the minor is seriously emotionally disturbed or has a serious mental disorder or a developmental disability, the multidisciplinary services prescribed under section 713 require that the minor *first* be adjudicated a ward of the court under section 602.

10

same right to due process in this context.  Just as incompetent minors should be safeguarded from delinquency proceedings they cannot comprehend or assist in defending against, incompetent adults should be shielded from criminal trial and possible punishment.  In *Medina I*, our Supreme Court reasoned that placing the burden to prove incompetency on the defendant was constitutional in part because criminal defendants and their counsel have better access to relevant information.  (*Medina I*, *supra*, 51 Cal.3d at p. 885.)  This rationale applies equally to minors subject to section 601 and 602 petitions.  (See also *People v. Nguyen* (1990) 222 Cal.App.3d 1612, 1618-1619 [defendant seeking to be tried in juvenile court had burden to prove his age]; Evid. Code, § 500 ["[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].)  Like Penal Code section 1369, section 709 adequately safeguards a minor's federal due process rights because it affords the minor "a reasonable opportunity to demonstrate incompetency."  (See *Medina II*, *supra*, 505 U.S. at p. 451.)  Further, the text of section 709, subdivision (c) supports the conclusion that minors bear the burden of proving incompetency; the statute mandates suspension of proceedings only upon a finding that a minor is "incompetent," rather than requiring suspension *unless* minor is found to be competent.

In sum, we hold the court properly allocated minor the burden to prove incompetency.

*Substantial Evidence Supports the Court's Finding Minor Was Competent*

We review a juvenile court's finding of competence for substantial evidence.  "The same standard governs our review of the sufficiency of evidence in juvenile cases as in adult criminal cases:  '[W]e review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial

11

evidence to support the verdict — i.e., evidence that is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.'"  (*Christopher F.*, *supra*, 194 Cal.App.4th at p. 471, fn. 6.)[6]

"Under well-established law the juvenile court was entitled to reject [Dr. Kojian's] ultimate opinion [minor] was mentally incompetent . . . ."  (*Christopher F.*, *supra*, 194 Cal.App.4th at p. 471.)  In *Alejandro G.*, the Court of Appeal affirmed the trial court's finding the minor was competent to stand trial even though two psychologists opined to the contrary.  (*Alejandro G.*, *supra*, 205 Cal.App.4th at p. 478.)  "The fact that both doctors opined Alejandro was not competent does not prove a lack of substantial evidence to support the court's finding.  The court is not under any obligation to adopt the doctors' opinions.  Such a requirement would undermine the court's role in determining a minor's competency."  (*Id.* at p. 480.)

Here, the court reviewed Dr. Kojian's report and the modification petition and detention records, and then explained at length its reasons for finding minor had not sustained his burden to prove incompetence.  The court articulated its reasons for declining to adopt Dr. Kojian's opinion.  Those reasons are supported by substantial evidence in the record.  The court found that certain statements made by minor reflected his understanding of the nature of the proceedings and charges against him.  The court noted that minor's school believed his cognitive and adaptive delays may have been drug induced and that his 2009 testing did not show cognitive or adaptive delays.  Minor did not call any other witnesses (e.g., his mother or teachers) to support his claim of

---

[6]    In an argument raised in minor's reply brief, he suggests we apply the standard of review applicable to findings of sanity.  We do not consider issues raised in the reply brief.  (*People v. King* (1991) 1 Cal.App.4th 288, 297, fn. 12.)

incompetence.  He refused to submit to any psychological tests.  Substantial evidence supports the court's finding he failed to meet his burden to demonstrate his incompetence to stand trial.


DISPOSITION


The judgment is affirmed.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.