Filed 2/20/14  In re H.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>H.M.,<br><br>Defendant and Appellant. | F067339<br><br>(Super. Ct. No. JW130335-00)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Peter A. Warmerdam, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Poochigian, J. and Detjen, J.

Following a jurisdictional hearing, the juvenile court found true the allegation that 15-year-old H.M. resisted a peace officer (Pen. Code, 148, subd. (a)(1),[1] a misdemeanor). The allegation that she falsely identified herself to a police officer was found not true. The court adjudged H.M. a ward of the court and granted probation. On appeal, H.M. contends insufficient evidence supported the juvenile court's finding that she resisted a peace officer. We will affirm.

## FACTS

On November 23, 2012, Officer Trefz was in uniform and patrolling in a marked patrol vehicle. At about 12:50 p.m., he and other officers were dispatched to Apartment B (the apartment) at a particular address regarding a stolen vehicle. Officer Trefz was told that numerous subjects were seen exiting the stolen vehicle and entering the apartment. Upon Officer Trefz's arrival, he saw H.M. standing at the top of the landing of an outdoor staircase to the apartment. Another uniformed officer told H.M. to stop and not move. She did not comply, but instead ran into the apartment and closed the door. Officer Trefz ran after her, knocked on the front door, and announced police. She did not open the door. Officer Trefz forced the door open and saw her standing in the living room. He told her to get on the ground, but again she did not comply. She asked him what he was doing in there and she tried to walk away. Officer Trefz grabbed her wrist, and she tried to pull away from him. He put her in a wrist lock, put her on the ground, got on top of her, and applied handcuffs.[2] He did so for officer safety because he had not yet cleared the apartment. He detained her so the officers could determine who was involved with the stolen vehicle. He took her to his patrol vehicle and asked her name. She did not tell him. Another officer asked her name and she gave a false name. Officers eventually learned her true name and booked her into juvenile hall.

---

[1]     Subsequent statutory references are to the Penal Code.

[2]     Officer Trefz was five feet eleven inches tall and weighed about 180 pounds.

The officers located two suspects in the apartment and one outside of the apartment.

**Defense Evidence**

H.M.'s mother took her to the apartment to see her brother's girlfriend. They were planning to go to the theater. She had been at the apartment 20 or 30 minutes when the police arrived. She had been inside, but she stepped outside because she was doing her hair and she asked her friend where the hairspray was. She did not know the police were there. When she saw them, she closed the door because they had dogs and she was terrified of dogs. Then everything was "crazy."

The officers did not explain why they were present before they forced the door open. She had no reason to believe they were there for her. H.M. was trying to open the door, but they were pushing it. When they came in, they tackled her to the floor without telling her to get down. She weighed between 110 and 120 pounds. She was uncomfortable and got a rug burn on her knee. When officers asked her name, she told them two of her four names, the two names she normally went by, and her correct birth date. She did not use her last name because she did not like her father's name. One of her brother's friends told her to tell the officers her whole name and she did.

On cross-examination, H.M. explained that her mother dropped off her and her two brothers at the apartment. When she was standing outside the apartment, she heard nothing and was told nothing. She did not recall an officer commanding her to stay where she was. She just saw dogs and guns pointing at the people downstairs. She got nervous and terrified by all the guns and dogs. She admitted one dog was outside the vehicles, not near her on the stairs, but she said a dog was barking right next to her and guns were pointed when she was tackled to the floor.

*Rebuttal Evidence*

Officer Trefz explained that when he arrived on the scene and H.M. was standing on the stairs in front of the apartment, two police dogs were present, but they were inside vehicles.

On cross-examination, Officer Trefz said the dogs followed him into the apartment. Once he got H.M. into custody, officers used a dog to clear the apartment.

*The Ruling*

H.M.'s counsel argued that the officer abused his power when he tackled a small female who had committed no crime and had no idea why the officers were after her. She was terrified and overwhelmed. She gave the officers her correct birth date and the name she preferred to use.

The juvenile court found insufficient evidence that H.M. intended to deceive the officer to evade proper identification when she used an incorrect name. Thus, the court found count 2 not to be true.

Regarding count 1, the court stated:

> "On Count 1, is not what the officer did after the claim of resisting, delaying or obstructing an officer. That, of course, could be the basis for some other action on [H.M.'s] behalf, but the question is what, if anything, did she do to resist, delay or obstruct the officer prior to that point? And the Court does find that it is convinced beyond a reasonable doubt that [H.M.] did resist, delay or obstruct a peace officer in the performance of his duty. And Count 1 of the Petition is found to be true."

## DISCUSSION

H.M. contends insufficient evidence supported the jurisdictional finding that she resisted a *lawful* arrest because the officers lacked probable cause and used excessive force when making the arrest.

In evaluating the sufficiency of the evidence in a juvenile proceeding, the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses evidence that is reasonable, credible, and of solid value

4.

such that a reasonable trier of fact could find the elements of the offense beyond a reasonable doubt.  (*In re Christopher F.* (2011) 194 Cal.App.4th 462, 471, fn. 6.)

Section 148, subdivision (a)(1) provides, in relevant part, "[e]very person who willfully resists, delays, or obstructs any … peace officer … in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed …," is guilty of a misdemeanor.  Thus, "'[t]he legal elements of a violation of section 148, subdivision (a) are as follows:  (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.  [Citations.]' [Citation.]"  (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)

H.M. challenges the sufficiency of the evidence on the second element, arguing she did not violate section 148, subdivision (a)(1) because the officers were not acting lawfully when they attempted to detain her and therefore were not engaged in the performance of their duties when she resisted them.  We disagree.

A detention occurs within the meaning of the Fourth Amendment when the officer, by means of physical force or show of authority, in some manner temporarily restrains the individual's liberty.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 341; *People v. Souza* (1994) 9 Cal.4th 224, 229 (*Souza*).)  Although a police officer may approach an individual in a public place and ask questions if the person is willing to listen, the officer may detain the person only if the officer has a reasonable, articulable suspicion the detainee has been, currently is, or is about to be engaged in criminal activity.  (*Terry v. Ohio* (1968) 392 U.S. 1, 21; see *In re Tony C.* (1978) 21 Cal.3d 888, 893.)  To satisfy the requirement, the officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*Souza, supra*, at p. 231; *United States v. Sokolow* (1989) 490 U.S. 1, 7 ["the police can stop and briefly detain a person for

5.

investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause"].)

The inferences from conduct required to establish a reasonable suspicion ultimately rest on commonsense judgment about human behavior, rather than on scientific studies. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125.) "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal— to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' [Citation.]" (*In re Tony C., supra,* 21 Cal.3d at p. 894.) But, of course, "an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*Id.* at p. 893.)

Here, the officers had been informed that numerous people had been seen exiting the stolen vehicle and entering the apartment. When the officers arrived, H.M. was standing outside on the landing in front of the particular apartment. The officers already had a reasonable suspicion supported by articulable facts that criminal activity was afoot, and H.M.'s presence on the landing in front of the apartment provided some objective manifestation that she might be one of the people involved. Thus, the officers were justified in detaining H.M. by ordering her to stop so they could further investigate her possible involvement in the reported criminal activity.

But when the officers told H.M. to stop and not move, she instead fled into the apartment and closed the door. H.M.'s failure to submit to the lawful detention on the landing and her flight into the apartment further justified her detention.[3] (*People v.*

---

[3]     H.M.'s claim that she did not hear the officer's order while she was on the landing did not affect the facts known to the officers and the reasonableness of their suspicion based on an objective manifestation that she might be involved in the vehicle theft.

*Rodriguez* (2012) 207 Cal.App.4th 1540, 1544.)  Moreover, it justified the officers' forcible entry into the apartment to pursue her when she failed to open the door.  (*United States v. Santana* (1976) 427 U.S. 38, 42-43 [exigent circumstances exist when a lawful detention or arrest is initiated in a public place, but the suspect flees into a residence to avoid apprehension; officers who make a warrantless entry into a residence in hot pursuit of a fleeing suspect do not violate the Fourth Amendment]; *People v. Lloyd* (1989) 216 Cal.App.3d 1425, 1428 ["One type of exigent circumstances has been recognized where an arrest or detention based on probable cause is begun in a public place, but the suspect retreats into a private place in an attempt to thwart the arrest."].)

Inside the apartment, H.M. failed to comply with an officer's order for the third and fourth times, attempting to walk away when the officer ordered her to the floor and attempting to pull her arm away when the officer grabbed it.  By this point, she had repeatedly resisted officers in their lawful duties and her arrest was plainly justified. Substantial evidence supported the juvenile court's finding that H.M. resisted an officer in violation of section 148, subdivision (a)(1).[4]

## DISPOSITION

The juvenile court's findings are affirmed.

---

**4**     As the juvenile court noted, the force used to arrest H.M. is not relevant to whether she first resisted the officers' efforts to lawfully detain her.